MARY J. BRANDES v. HERBERT M. CARPENTER.[1]

May 27, 1897.

Nos. 10,505—(151).

### Guardian—Accounting—Laches.

A ward failed for 22 years after she attained her majority to take any steps to compel her former guardian to render and settle his account in the probate court, or turn over the property in his possession. This delay was not explained or excused. During all this time there was nothing done on part of either the ward, the guardian, or the sureties on his bond by way of a recognition or admission of the guardianship as a subsisting or undischarged trust. In the meantime one of the sureties on the guardian's bond had died, nine years before suit on the bond, and from the facts disclosed by the evidence presumably the guardian had become insolvent. *Held,* in an action on the guardian's bond against the surviving surety, brought by the ward over 22 years after she came of age, that her laches, irrespective of any statute of limitation, was a bar to her recovery.

Appeal by defendant from an order of the district court for Hennepin county, Russell, J., denying a new trial. Reversed.

*James A. Kellogg,* for appellant.
*Francis G. Burke,* for respondent.

MITCHELL, J. The plaintiff is a Dakota or Sioux mixed-blood, born December 17, 1855, married in 1877, and has always lived in Wisconsin. During her early childhood, certain "Sioux half-breed scrip" was issued to her under the act of congress of July 17 1854. A part of this scrip was, prior to September, 1870, the date does not appear, located on 120 acres of land in Morrison county, Minn., which thereby became her property. On September 14, 1870, upon the petition of her father, the defendant Farnham was appointed guardian of her estate in Minnesota by the probate court of Morrison county. In February, 1871, Farnham, as principal, and the defendant Carpenter and one Lovejoy, who died over nine years ago, as sureties, executed a guardian's bond in the statutory form, conditioned, among other things, that at the expiration of his trust Farnham would set-

1 Reported in 71 N. W. 402.

tle his account with the probate court, and pay over all the estate, money, and effects in his hands or due from him on such settlement to the person entitled to the same.

In April, 1871, Farnham petitioned the probate court for license to sell the land referred to. The court granted the license. The land was sold, the report of sale confirmed, a guardian's deed executed in October, 1871, and recorded in August, 1873. Nothing more was done or attempted to be done in the guardianship proceedings until December 30, 1895, when the probate court, upon petition of the plaintiff, cited Farnham to appear on the 17th of January, 1896, and render his account as guardian for settlement and allowance, and to pay over to plaintiff the money which he had received on sale of the land. Farnham failed to appear or render any account, and thereupon the court, upon proof, proceeded to settle his account, and ascertain the amount of money which he had received, and rendered a decree adjudging that he was indebted and should pay to the plaintiff the sum of $350, the amount for which the land was sold, with interest from June 1, 1872. Carpenter was not a party to this proceeding. Farnham having failed to pay, the plaintiff, in February, 1896, brought this action on the guardian's bond to recover the amount adjudged by the probate court to be due her. Carpenter, the surviving surety, was the only one who interposed any defense.

As counsel for the defendant does not question but that the sureties on a general guardian's bond are concurrently liable with the sureties on the sale bond for the failure of the guardian to account for the proceeds of real estate sold under license from the court, we have not considered the point. One of Carpenter's defenses was that more than 21 years had elapsed since any right of action accrued to the plaintiff against him. The statutory limitation which would apply is six years from the time the cause of action accrued. Plaintiff's contention is that no action on the bond would lie until the settlement of the guardian's account by the probate court, and therefore the six years would only commence to run from that date. On the other hand, the defendant contends that the statute began to run from the time the plaintiff became of age and was emancipated from the guardian, when it immediately became the duty of the guardian, under the

statute,[2] to "render his final account of his guardianship to the probate court, and turn over all the property in his possession belonging to the ward" to her, at which time, in case of his failure to do so, the ex-ward has the immediate right to take steps to compel him to do so. The authorities upon this question are conflicting, and leave it in much doubt and confusion. The conflict seems to be due in part to differences in statutes; in part to a difference of opinion as to whether the guardian's bond is, in the first instance, the subject of a suit, or only so upon a failure to obey some order or judgment of the court, as, for example, to file an account, or to pay over the amount ascertained to be due on a settlement and allowance of the account; and in part to a difference of opinion as to whether, when a guardian fails to render his account, and turn over the property in his hands, when his ward becomes of age, this default and all subsequent acts of omission constitute but a continuing default, or whether every subsequent failure to comply with any order of the court constitutes a new breach of the conditions of the bond. Among the authorities on this subject may be cited State v. Henderson, 54 Md. 332; Biddle v. Wendell, 37 Mich. 452; Finnell v. O'Neal, 13 Bush, 176; People v. Seelye, 146 Ill. 189, 32 N. E. 458; Jones v. Jones, 91 Ind. 378; Lane v. Farmer, 11 Lea, 568; Langston v. Shands, 23 S. C. 149; Newton v. Hammond, 38 Oh. St. 430.

But it is not necessary to consider any of these questions, for the reason that, even in the absence of any statute of limitation, the plaintiff is barred from prosecuting an action on this bond against the sureties by her own gross and unexcused laches. The doctrine is as old as equity itself that there must be a period beyond which human transactions shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided; and there is a growing tendency on part of the courts to extend the application of this rule. Courts of equity, acting upon their favorite doctrine of discouraging stale demands, refused to interfere where there had been gross laches in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights. The rule was one of convenience and policy, founded on a necessary regard for the peace and security of society. The principle is embodied in the maxim that

2 G. S. 1894, § 4573.

equity aids the vigilant, and not the negligent. It is designed to promote diligence on the part of suitors, and to discourage laches, and is wholly independent of any statutory period of limitation. When courts of equity found a statute governing actions at law which was applicable to the case, they adopted it, but only by way of analogy; and in the application of the principle they were not limited to cases where they could find an analogous statute. While formerly this doctrine was peculiar to courts of equity, yet, now that the distinction between actions at law and actions in equity has been abolished, and both forms of relief are administered by the same tribunal, the courts will apply this old equity doctrine in any action, without regard to whether it would have been of legal or equitable cognizance under the former practice.

Inasmuch as under our constitution[2] the probate court has exclusive original jurisdiction of the estates of persons under guardianship, it is doubtless true that no action on a guardian's bond will lie until he is called to account by that court, and has defaulted in the performance of its order or decree. But, it being the duty of the guardian to render his account and turn over the property in his hands when his ward comes of age, if he fails to do so the former ward has the right to immediately set in motion proceedings to compel him to do so. It cannot be that the ex-ward or his successors in interest can, by omitting to take such steps, extend indefinitely the liability of the sureties on the guardian's bonds, and of their heirs or devisees or legatees, until, perhaps, all the original parties are dead, and the evidence lost. It is true that the sureties themselves might compel their principal to render his account, and have it settled and allowed; but, as a matter of fact, they usually know very little about the state of his accounts, or what has come into his hands, and trust to the wards themselves to look after their own interests within a reasonable time after they attain their majority.

In the present case, from the time the guardian's deed was executed, in October, 1871, until the plaintiff petitioned the probate court, in December, 1895, to cite the guardian to render and settle his account, there was not a thing done by either the guardian, his sureties, or the plaintiff which amounted to a recognition or admission of

[2] Art. 6, §§ 1, 7.

the guardianship as a subsisting and undischarged trust. After the plaintiff came of age, in December, 1873, over 22 years elapsed before she made a solitary effort to inquire into or assert her right to this land or its proceeds, or against her former guardian. This great delay is neither explained nor excused. It is true that she testified that she never knew that Farnham had been appointed her guardian, or had sold the land, until she was informed of the facts by her present attorney, about four months before she commenced this action. But she admits that she knew that she was entitled to some scrip, and that it had been issued to her, and that it had been located on land in Minnesota, and that she heard all this when she was a small child; that it was talked about in her family at that time.

This information she had retained all these years, and yet, so far as appears, she had never made the least effort to ascertain where the land was situated, or what had become of it. She was bound to know the law that the land on which the scrip was located was her property, and would continue such until legally sold. It does not appear that, if she had made any effort in that direction, there would have been any difficulty in her ascertaining where the land was located; and the public records in the offices of the probate court and of the register of deeds would have conveyed full information as to the guardianship proceedings and the sale of the property. Her whole conduct during these 22 years clearly indicates a total abandonment of any rights or claims which she might once have had. In the meantime the defendant's co-surety has long since deceased, and presumably his estate has been fully administered and distributed, or else he died insolvent. And it is also fair to presume from what the record discloses that the principal, Farnham, has become wholly insolvent. It would be difficult to conceive of a much stronger case for the application of the doctrine of laches in favor of the surviving surety on this guardian's bond. For a case where this doctrine was applied under similar circumstances, see Harrison v. Heflin, 54 Ala. 552.

Order reversed, and new trial ordered.