THE PEOPLE OF THE STATE OF NEW YORK ex rel. CAIN O'CONNOR, Respondent, *v.* HENRY J. GIRVIN, as Chief of Police of the City of Buffalo, et al., Appellants.

**Buffalo (city of) — mandamus — patrolman of police force detailed for detective duty, whose designation has been revoked and who has been reassigned to duty as a patrolman, is not entitled to a writ of mandamus reinstating him as detective-sergeant.**

Under the charter of the city of Buffalo (L. 1891, ch. 105, § 191; amd. by L. 1912, ch. 198) as it existed before the charter enacted in 1914 (L. 1914, ch. 217), the superintendent of police was authorized to detail for detective duty a certain number of patrolmen who should be the detectives of the police force and be known as detective-sergeants with a salary fixed by the police commissioners, and under such provisions patrolmen were detailed to detective duties and were not required to take a new examination nor did they receive from the commissioners a new appointment, and such details might be terminated at the will of the officer who made them, without preferring charges, or a public hearing thereon, since such revocation of a detail was not a reduction of rank within the meaning of other provisions of the charter.    The present charter (L. 1914, ch. 217) did not change the status of detective-sergeants previously appointed under the former charter.    It follows, therefore, that a patrolman, who had been designated in 1904 to serve as a detective-sergeant, and served until 1919, when his designation was revoked and he was reassigned to duty as a patrolman, is not entitled to a peremptory writ of mandamus reinstating him as a detective-sergeant.

*People ex rel. O'Connor* v. *Girvin*, 188 App. Div. 1000, reversed.

(Argued November 17, 1919; decided December 9, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 23, 1919, which affirmed an order of Special Term grantng a motion for a peremptory writ of mandamus to compel defendants to reassign the relator to duty as a detective-sergeant in the police department of the city of Buffalo.

The facts, so far as material, are stated in the opinion.

*William S. Rann, Corporation Counsel (George J. Feldman* of counsel), for appellants.    Detective-sergeants of the Buffalo police force are patrolmen detailed to detective duty and may be reassigned to patrol duty in the sound discretion of the commissioner of public safety.    (L. 1901, ch. 105,. § 191; *Matter of Pritchard,* 51 Misc. Rep. 484; *People ex rel. Buckley* v. *Roosevelt,* 5 App. Div. 168; *Matter of Sugden* v. *Partridge,* 174 N. Y. 87.)

*Matthew W. Weimar* and *Henry W. Killeen* for respondent.    A detective-sergeant of the Buffalo police department has a position superior to and distinct from that of a patrolman and cannot be removed therefrom nor summarily ordered to patrol duty except in pursuance of the provisions of section 251 of the 1916 charter, after the hearing of specific written charges as provided thereby.    Section 251 does not create a new position in the police department.    (*People ex rel. Sugden* v. *Partridge,* 174 N. Y. 87; *Fay* v. *Partridge,* 174 N. Y. 527; *People ex rel. Lahey* v. *Partridge,* 74 App. Div. 291; *People ex rel. Burns* v. *Partridge,* 38 Misc. Rep. 697; *People ex rel. Buckley* v. *Roosevelt,* 5 App. Div. 168; *Matter of Pritchard,* 51 Misc. Rep. 483.)

CARDOZO, J.    In February, 1892, the relator, naving passed a civil service examination, was appointed a patrolman by the police commissioners of the city of Buffalo.    In February, 1904, he was designated by the superintendent of police to act as detective-sergeant. He served as such until February, 1919, when his designation was revoked, and he was reassigned to duty as a patrolman.    The legality of this revocation, in default of charges of misconduct, is the question to be determined.

Under the law as it stood before 1914, when the present charter of Buffalo was adopted, there was little, if any, room for difference of opinion.    " The superin-

tendent shall detail for detective duty such patrolmen not exceeding twelve in number * * * as he shall, from time to time select," (Sec. 191 of old charter, L. 1901, ch. 105, as amended by L. 1912, ch. 198). " The patrolmen so detailed shall compose the detectives of the force, and during the time said patrolmen are detailed for detective duty they shall be known as detective-sergeants, and each of them may receive for such detective service such salary as may be fixed by the board, with the consent of the common council " (Sec. 191, *supra*). Under those provisions, detective-sergeants were patrolmen detailed to detective duties. They did not take a new examination, nor receive from the commissioners a new appointment (Secs. 187, 191, 200). They were designated by the superintendent for the discharge of special duties, just as they might have been detailed to preserve order at the court house or at places of amusement, or to render other services less rigorous than patrol duty upon the streets. Such details might be terminated at the will of the officer who made them. The faithful patrolman, if he turned out to be a poor detective, might be sent back to service on patrol. There was, it is true, a provision even then that all members of the police force should " hold office during good behavior " and should be " liable to removal or reduction in rank " only upon written charges and public hearing (Sec. 192). But revocation of a detail was not reduction in rank within the meaning of the statute (*People ex rel. Buckley* v. *Roosevelt*, 5 App. Div. 168). This conclusion would have been necessary though there had been no other expression of the legislature's purpose, for it followed as a deduction from the essential nature of a detail. It was made still plainer, however, by a later section (Sec. 200), which reiterated the distinction between details and appointments, and prescribed the evidence for each. " The board shall issue to each member of the police force a proper warrant of appointment, signed by the

board and countersigned by the clerk which warrant shall contain the date of his appointment and his rank. Each patrolman detailed to duty as a detective shall have issued to him a written order of detail, signed by the superintendent and countersigned by the clerk of the board, and the revocation of such detail shall be issued in like manner " (Sec. 200).

A new charter for the city of Buffalo was enacted by the legislature in 1914, and took effect on January 1, 1916 (L. 1914, ch. 217). The relator insists that detective-sergeants have been invested with a new status by force of its provisions. This result is said to .follow from the failure to re-enact sections 191 and 200 of the old charter, and the substantial re-enactment of section 192 as section 251 of the new one. Section 191, as we have seen, authorized the detail of patrolmen to detective duty, and thereby established the class of detective-sergeants. By the failure to re-enact that section, the legislature did not intend, however, to terminate the class or change the method of selection. This is plain from two circumstances. One is that in sections 250 and 250a, it recognized the class as still existing. The other is that in section 250, it preserved the rules and regulations of the department then in force and gave them the force of law until the council of the city should otherwise prescribe. These rules and regulations are in evidence, and they characterize detective-sergeants as patrolmen detailed to serve in the bureau of detectives, and prescribe the mode of designation. The failure to re-enact section 200 of the old charter is also, we think, without significance, or at least without any that is controlling. That section was not the source of the power to terminate a detail. Its only function was to prescribe the form in which appointments and details and their revocation should be certified. That subject is now adequately regulated by the rules and regulations of the department, which under section 250 of the present charter have the

force of law. Equally without controlling significance is section 251, which provides that members of the police force in office when the act takes effect, " shall continue in office and hold their respective positions, unless reduced in rank or removed," and prohibits removal or reduction in rank " except upon written charges specifying in detail the accusation made." That prohibition is nothing more than a re-enactment of section 192 of the old charter, and should receive a like construction. The distinction is still one between permanent positions and temporary assignments. There is nothing in the statute to indicate an intention that new positions should be established, and that the system of details should be abolished. This becomes the more certain when we recall the provisions of sections 250 and 250a. Detective-sergeants are there recognized as an existing class with known and established attributes. Section 250 authorizes the mayor to " divide the sergeants and patrolmen of such force (but not including detective-sergeants) who may be on duty in the open air, on the streets or other public places of the city, into three platoons," and section 250a provides that " the tours of duty of sergeants, and patrolmen (not including detective-sergeants) on duty in the open air," shall be changed at least once in each month. In thus recognizing a class which it did not create or define, the legislature must be presumed to have spoken with knowledge of existing conditions, to have used words with their existing meaning, and to have preserved the class with its existing status. Detective-sergeants thus remained what they had always been before. They were patrolmen detailed to duty as detectives. They were confirmed in the rights which were already theirs, and in no others. We have little doubt that this construction of the statute promotes the discipline and efficiency of the police force, and ought, therefore, to be preferred if the meaning is uncertain. The case is unlike *Matter of Sugden* v. *Partridge* (174

N. Y. 87), where the statute provided that detective-sergeants in the city of New York should hold a distinct rank and should not be reduced therefrom except in the manner provided by law for sergeants and other officers. If the legislature wished to confer like privileges upon detective-sergeants in Buffalo, it should have spoken with equal clearness. Until it does so, we must hold that their status is unchanged.

The relator argues that the question has ceased to be substantial, because, since the decision of the Appellate Division, he has, on his own application, been retired on a pension (Charter, section 264, subd. 3). The salary to be paid to him will, however, be affected by our ruling. If the mandamus stands, he must be compensated at one rate; if it is set aside, at another. The controversy remains a real one.

The order of the Appellate Division and that of the Special Term should be reversed, and the application for a mandamus denied, with costs in all courts.

HISCOCK, Ch. J., CHASE, POUND, McLAUGHLIN and ANDREWS, JJ., concur; CRANE, J., dissents.

Orders reversed, etc.