[No. 28264. Department Two. April 29, 1941.]

THE STATE OF WASHINGTON, on the Relation of John Reilly et al., Appellants, v. CIVIL SERVICE COMMISSION OF THE CITY OF SPOKANE et al., Respondents.[1]

[1]Reported in 112 P. (2d) 987.

Harold M. Gleeson, for appellants.

G. M. Ferris, B. A. Farley, and Paul F. Schiffner, for respondents.

SIMPSON, J.—In this case a writ of mandate was sought, by three members of the police force of the city of Spokane, to compel the civil service commission of that city to classify positions in the police department according to a list submitted by them, and to provide an eligibility list from which vacancies might be filled for each position by open, competitive, and free examinations as to fitness, and on the basis of merit, experience, and record. Particular emphasis was directed toward the position of detective, or plain-clothes man, which was alleged to be a distinct classification from that of patrolman, requiring additional ability, experience, and training. It was alleged that this position was being filled by "transfers," without competitive examinations, and that such "transfers" actually were promotions.

The trial court, after making findings of fact and conclusions of law, dismissed the action.

The numerous assignments of error are all directed to one question; namely, whether the civil service commission can be compelled by the court to give separate classification to designated positions in the police department.

Article VI, § 53, of the charter of the city of Spokane reads as follows:

"The commission, with the approval of the council, shall make such rules and regulations for the proper conduct of its business as it shall find necessary and expedient. The commission, among other things, shall provide for the classification of all employees, except day laborers and the appointive offices mentioned in sections twenty-four (24), twenty-five (25) and thirty-two (32) of this charter; for open competitive and free examination as to fitness; for an eligibility list from which vacancies shall be filled, for a period of probation before employment is made permanent; and for promotion on the basis of merit, experience and record.

"Employees within the scope of this article who are in office at the time of the adoption of this charter shall retain their positions, unless removed for cause.

"The council may, by ordinance, confer upon the commission such further rights and duties as may be deemed necessary to enforce and carry out the principles of this article."

The trial court found that the commission had classified the positions in the police department into three grades: patrolman, sergeant, and captain. Appellants, however, contend that this classification is inadequate, and that the position of detective, in particular, is so distinct that the court should compel the commission to establish additional classifications.

The evidence shows that, at the present time, the chief of police details or assigns patrolmen to plain-clothes duty, and that, when a patrolman is detailed to that duty, he receives eleven dollars per month more salary than when in uniform. It was also shown that detective work requires special capacities, in so far as personality, dependability, initiative, intelligence, and experience are concerned. The duties which are performed by detectives differ from those of plain patrolmen in that the detectives usually are

put to work on cases after crimes have been committed, whereas the patrolmen walk a beat and their function is to a large extent the prevention of crimes and the preservation of the peace.

Since no evidence relative to the other positions enumerated in the petition for additional classifications was presented, we will confine our opinion to the position of detective or plain-clothes man, which is now included in the commission's classification of patrolman.

This court has often stated the rule relative to the issuance of writs of mandate in matters involving discretion on the part of a public agency against whom the mandate is sought. The following quoted portion of *State ex rel. Yeargin v. Maschke*, 90 Wash. 249, 155 Pac. 1064, is an excellent statement of our rule:

"The general rule, of course, is that the discretionary power of the board of county commissioners is not subject to review by the court. But this is not a universal rule. If the action of the board of county commissioners is arbitrary or capricious, or if its action is prompted by wrong motives, there is not only an abuse of discretion, but, in contemplation of law, there has been no exercise of the discretionary power. If an honest discretion, as demanded by the law, has not been exercised, the result is to substitute arbitrary action for such discretion. If a tribunal such as the board of county commissioners acts arbitrarily, or refuses to exercise its discretion, the law will by mandamus require it to exercise its discretionary power."

Again, in *State ex rel. Farmer v. Austin*, 186 Wash. 577, 59 P. (2d) 379, we stated:

"Courts will not by mandamus attempt to control the discretion of subordinate bodies acting within the limits of discretion vested in them by law. Where courts do interfere, it is upon the theory that the action is so capricious and arbitrary as to evidence a total failure to exercise discretion and is, therefore, not a valid act."

Our search of the authorities makes it clear to us that civil service commissions come within this rule and have a discretionary power in the matter of classification, as will be noted in the following quotations:

"It seems to me that the cases cited indicate the true extent to which the court should assume to supervise the action of the civil service commission. If the classification of the commission clearly violates the Constitution or the statute, mandamus should issue to correct the classification. If the action of the commission is not palpably illegal the court should not intervene." *People ex rel. Schau v. McWilliams,* 185 N. Y. 92, 77 N. E. 785.

" 'Where the position is one as to the proper mode of filling which there is fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification. In other words, if the classification of the commission clearly violates the constitution or the statute, *mandamus* should issue to correct the classification. If the action of the commission is not palpably illegal, the court should not intervene.' (1 Dillon on Municipal Corporations, 5th ed., pp. 700, 701.)" *Pratt v. Rosenthal,* 181 Cal. 158, 183 Pac. 542.

"The board [civil service] has a sound discretion in determining what duties shall be imposed upon an employee in a particular position, and whether the addition of certain duties requires a reclassification of that position. Unless there is a clear abuse of discretion in that regard, we may not interfere with the province of the board by means of *mandamus* or otherwise. (*Mann v. Tracy,* 185 Cal. 272 [196 Pac. 484].)" *Otto v. Reardon,* 21 Cal. App. (2d) 260, 69 P. (2d) 185.

"The proper remedy, in such cases is by mandamus which lies whenever the classification clearly violates a constitutional or statutory provision, and the court will then correct the classification, but it will not interfere with a reasonable discretion on the part of the commission. The test as to whether the discretion of

the commission is subject to judicial review is whether reasonable men may be expected to differ on the point in question." 10 Am. Jur. 937, § 16.

The question with which we are confronted is whether the civil service commission abused the discretion vested in it by the charter when it classified the police force as it did, including those men who are engaged in detective work under the grade of patrolman.

The contention of respondents is that, when a man is assigned to detective work, it is simply a "detail," rather than a "promotion," and that there is no difference in rank between those doing detective work and those in the uniformed part of the department. This view was recognized in the case of *People ex rel. O'Connor v. Girvin,* 227 N. Y. 392, 125 N. E. 587, in which one who had been assigned to detective work was put back into the uniformed branch of the department. The rules of the commission required written charges to be made when demotions took place, and the policeman claimed that he had been demoted, and that no charges had been filed. In denying his petition for a writ of mandate, Judge Cardozo stated:

"Detective-sergeants thus remained what they had always been before. They were patrolmen detailed to duty as detectives. They were confirmed in the rights which were already theirs, and in no others. We have little doubt that this construction of the statute promotes the discipline and efficiency of the police force, and ought, therefore, to be preferred if the meaning is uncertain."

Although we are of the opinion that the commission might very well have classified the detective branch separately, in view of the differences between the duties, salaries, and requirements of the groups, we do not feel that the commission's classification was so palpably erroneous as to warrant our interference with its discretion. The distinction in duties and require-

504

ments, although substantial, is not unreasonable, nor is the salary difference an extreme one. It should be noted that in *People ex rel. O'Connor v. Girvin, supra,* the men detailed to the detective division also received a higher salary than the uniformed patrolmen, but that fact did not affect the outcome of the case. Since the civil service commission was not acting in a manner palpably illegal and no abuse of discretion was shown, the courts have no jurisdiction to interfere with the classification.

The judgment of the trial court is affirmed.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.

[1]Reported in 112 P. (2d) 989.