STATE EX REL. WILLIAM FLORRELL AND OTHERS v. RINEHOLD MANGNI AND OTHERS.[1]

April 6, 1950.

No. 35,002.

---

[1]Reported in 42 N. W. (2d) 529.

*John F. Bonner,* City Attorney, and *Palmer B. Rasmusson,* Assistant City Attorney, for appellants (respondents below).

*Bryngelson, Pratt & Bradley* and *M. E. Culhane,* for respondents (relators below).

*M. Arnold Lyons* and *Robins, Davis & Lyons* as *amici curiae* filed a brief in support of the contention of appellants.

MAGNEY, JUSTICE.

This is an appeal by the civil service commission of Minneapolis and its secretary from an order of the district court setting aside and annulling an action of the commission. Respondents asked review of said action through certiorari. As respondents here were relators in the action below, we shall refer to them as relators here, and to the appellants here (respondents below) as the commission. The nature of the questioned action of the commission will be disclosed later.

Relators have for a number of years been employed in the equipment division of the city engineering department of Minneapolis as truck drivers and classified as such by the commission. On November 13, 1935, the commission adopted a resolution in part as follows:

"* * * In case the Street Department, in an emergency, require [*sic*] a greater number of tractor operators than are available, truck drivers capable of operating tractors can be assigned to tractors at tractor operators' rate of pay."

This was in effect a ratification and confirmation of an arrangement which had been in operation since 1930. Some of relators had been employed since that time under this working arrangement. On April 14, 1937, the minutes of the proceedings of the commission disclose the receipt of a letter from the city engineer as follows:

"Due to a shortage of tractor operators and an insufficient number of truck drivers on the supplementary tractor operators list, (a tractor driving test given to our truck drivers in 1931) I hereby make a request that at least ten more men be placed on the supplementary tractor operators list by promotional examination or a test, from our truck drivers list, with the understanding that they will automatically return to their former seniority standing on the regular truck drivers list when tractor work for them is finished at the end of a season or an emergency period. Because of the short street grading season and the few times it is necessary to use these men on tractor work in an emergency, it would be impractical to enlarge the regular tractor operators list when we have so many truck drivers who are very capable of handling this work in a satisfactory manner. This would also keep our key men working for the equipment department the greater part of the year."

Upon receipt of this communication, a resolution was adopted by the commission on April 14, 1937, in the following words:

"* * * that pursuant to the request of the City Engineer, promotional examination be held for tractor operator, open to truck drivers employed or on the lay off list in the Equipment Division, to establish a supplementary tractor operator list for seasonal work, and that inasmuch as the work is of an emergency nature and of a seasonal nature, the men certified to this work retain their rights on the truck drivers list."

At its next meeting, held on April 28, 1937, the commission, without rescinding its resolution of April 14, 1937, adopted the following resolution:

"1. That no new examination be held establishing an original list because it is not the intent to add to the present seniority list of tractor operators.

"2. That the following group of tractor operators who qualified on a previous examination No. 2370 be accepted for detail in the order of their percentage in this examination: [Here follows a list

of 15 names, including the names of four of the relators herein, William Florrell, Austin Bodin, Terney Bloom, and Eddie Hagenson].

"3. That any details to be made in addition to the above group are to be approved by the Commission and selected from a group of truck drivers who have passed a qualifying examination. Said detail to be made in the order of their passing the practical test. This examination would in no way establish an eligible list or civil service rights to future appointment as permanent tractor operators but would simply determine the order in which the truck drivers would have preference for detail."

The motion to adopt the above resolution was in the following language:

"* * * that the above resolution be adopted by the Civil Service Commission as the procedure to be followed in the emergency detail of tractor operators in the City Engineering Department."

The petition for the writ of certiorari sets out that only two of the relators, William Florrell and Austin Bodin, took a regular promotional examination in 1930. This was a promotional examination open to truck drivers employed by the city of Minneapolis. In May 1938, according to the petition and the civil service commission minutes and records, a further practical test was given to truck drivers by the city engineer to determine the order of truck drivers being assigned on tractor work when necessary, and 11 names were added to the supplementary list. The names of relators Edwin Vogel, Arthur Hanson, Frank Chesney, Walter Apsley, and James Stranges are on this list.

In June 1941, 32 names were added to the list in the same manner. Among them are the names of the following relators: Ralph Smith, Arlington Rowe, Guy McGardy, Louis Hough, Ernest Vincent, James Redner, Francis Williams, Francis Doyle, Wilber Brevick, Earl Dillery, Archie Halveson, and Ray Wright. Anthony Wick, named in the list, and Axel Wick, a relator, are probably the same person, as that is the only name unaccounted for. The foregoing discloses how the names of all the relators happen to be found on

the supplementary tractor operator list. The resolution of April 28, 1937, has not been modified or changed. The names of all relators are on the list of truck drivers assigned to tractor work, and since the time their names were placed on the list they have worked as tractor operators each and every year of their employment "approximately six months of each year," according to their petition. The number of years each has thus worked varies from eight to 23 years.

At a meeting of the commission on May 14, 1947, a resolution was adopted by it to the effect that the classification of tractor operator be abolished and that this position be consolidated with the classification of construction equipment operator; that the operation of tractors be considered a machine classification under the class title of construction equipment operator; that the present tractor operators who are classified as tractor operator as a result of examination be added to the foot of the present construction equipment operator seniority list and their rights as tractor operator be not affected; that they acquire no seniority on the construction equipment operator list until all the men with construction equipment and power shovel ratings are working; and that this same provision apply to construction equipment operators when working as tractor operators. It was further resolved that at such time as additional tractor operators were needed the commission should hold an examination for construction equipment operator with tractor experience.

The city engineer construed the resolution of May 14, 1947, as one abolishing the supplementary tractor list, and relators, by reason of this construction placed upon the resolution of the commission, claim that they have been deprived of their rights and privileges as supplementary tractor operators. They claim that since the passage of the resolution they have been denied said preference of employment and that their appointment to said employment has only been made as, if, and when said tractor operators and construction equipment operators were not available. They further claim that numerous construction equipment tractor operators have, since the passage of the resolution, been placed upon the list

of available tractor operators for assignment to work, and that the said list will be gradually enlarged in the future to such an extent that relators will be deprived of all opportunity of employment as tractor operators in about eight months. The files and records of the commission indicate that there are approximately 81 employes of the city of Minneapolis qualified as tractor operators, to wit: (1) Eleven so-called regular tractor operators, who have taken competitive examinations as tractor operators; (2) about 22 supplementary tractor operators, who are the relators; (3) 33 construction equipment operators; and (4) 25, including some of the relators, who have passed promotional examinations.

During the time relators were employed as tractor operators, they received as compensation for their services the regular scale of wages paid tractor operators. The approximate difference in the salary paid truck drivers and tractor operators is $100 a month, amounting to about $600 a year for each supplementary tractor operator.

On August 11, 1948, relators petitioned the commission for reinstatement of the supplementary tractor operator list and the placing of petitioners thereon with the seniority rating existing on May 14, 1947, with preference of employment as tractor operators as, if, and when said list of regular tractor operators had been exhausted. A hearing was had on the petition, and on November 24, 1948, it was denied by the commission.

The trial court ordered and adjudged that the action of the commission on November 24, 1948, in denying the petition and request of relators to vacate, change, and modify the action of the commission taken on May 14, 1947, be reversed, set aside, and annulled. It further vacated the order of the commission of May 14, 1947, and ordered the commission to—

"amend, change and modify said resolution to provide that said change in classification and consolidation as in said resolution provided does not abolish said supplementary tractor operator list or in any way remove relators from said supplementary tractor operator list nor in any manner change the seniority rights to employ-

ment as supplementary tractor operators according to grading of relators and preference to assignment to such work, and that their right to assignment for such work shall immediately follow that of regular tractor operators who at the time of the passage of said resolution had priority over relators."

This appeal was taken from the above order.

Chapter 19 of the city charter of Minneapolis provides, in section 7, in part as follows:

"The [civil service] commission shall, from time to time, make, amend, alter and change rules, to promote efficiency in the city service and to carry out the purposes of this chapter. The rules shall provide, among other things, for:

\* \* \* \* \*

"d. The creation of lists of eligible candidates after successful examination, in the order of their standing in the examination, and without reference to time of examination. Such lists shall be embraced in an eligible register."

The rules of the commission provide for such procedure. The examination referred to above must, of course, be an examination given by the commission itself. Relators contend that they took an examination, which resulted in their names being placed upon a supplementary tractor operator list. The record shows that the examination for supplementary tractor operators, an examination upon which relators principally base their rights, was not the kind of an examination to place applicants on an eligible list. In their petition for the writ of certiorari relators set out:

"\* \* \* That the kind, nature and character of said examination and test taken by relators other than relators Florrell and Bodine is contained in Exhibit 'A' hereto attached, \* \* \*."

An inspection of exhibit A reveals that it is captioned: "City Engineer's Department, Equipment Division, Examination for Supplementary Tractor Operators." The exhibit itself is designated "Training and Experience paper." It is in the form of a question-

naire as to truck drivers' experience with motor equipment. The applicants are instructed that they may fill out the blanks at home, and that they may have some other person fill them out if applicants so desire. There is no evidence that a practical examination was also given, but the petition sets out that one was given by the city engineer's department.

It seems obvious that this so-called examination given to relators was not an examination given by the commission or one contemplated by the charter or rules of the commission, and that the list created from such an examination is not such a list of eligible candidates after successful examination as is provided for by the civil service rules or laws.

The commission did not intend to create a list of eligible tractor operators by means of the examination given by the city engineer. The resolution of the commission adopted April 14, 1937, stated: "That no new examination be held establishing an original list because it is not the intent to add to the present seniority list of tractor operators." The resolution further stated that the examination to be given "would in no way establish an eligible list or civil service rights to future appointment as permanent tractor operators but would simply determine the order in which the truck drivers would have preference for detail." The so-called examination given by the city engineer was not a qualifying examination given by the commission for a new classification of civil service employes, nor was it a promotional examination given by the commission to truck drivers. It was, as it was intended to be, only a practical method whereby truck drivers would be selected for detail as seasonal tractor operators. It was not an eligible list, as understood in these matters. It simply determined the order in which truck drivers would have preference for such seasonal tractor operating detail. If this were not so, relators would be placed upon a permanent list of eligibles for appointment without having taken an examination given by the commission. The city charter and the rules of the commission provide for the creation of lists of eligible candidates only after successful examination given by the commission.

Relators contend that the working arrangement whereby the truck drivers would also be part-time operators of tractors in effect created a new classification, and that at this late date any irregularity or informality in creating the supplementary tractor operators list is of no importance. The job of truck driver would be one job. The job of supplementary tractor operator would be another job. Relators' contention is that their names could properly be placed on two lists in the eligible register, one list for each of the two jobs above mentioned—in effect, that these employes could acquire seniority rights on two lists and thus hold two civil service jobs concurrently.

We are of the opinion that relators, under the facts here, hold only one classified position, that of truck drivers. Their selection during part of the year to be tractor operators was an assignment to *detail*. And an assignment to detail may be changed at any time. Relators insist that they are regular truck drivers and, as such, permanent employes of the classified service. They also insist that they are supplementary tractor operators and, as such, permanent employes of the classified service. It does not seem consistent with civil service intendment that one person may hold seniority rights on two different eligible lists. What in fact is a mere assignment to an emergency or seasonal detail cannot be converted to a new permanent position in the classified service—a position never intended to be created by the commission and for the creation of which the required procedure had not been taken.

In State ex rel. Reilly v. Civil Service Comm. 8 Wash. (2d) 498, 502, 112 P. (2d) 987, 988, 134 A. L. R. 1100, the civil service commission classified as patrolmen members of the police force detailed to detective work. There was a substantial difference between patrolmen and detectives in duties and qualifications, and the assignment to detective work carried with it a moderate increase in salary. The court said:

" 'The board [civil service] has a sound discretion in determining what duties shall be imposed upon an employee in a particular position, and whether the addition of certain duties requires a reclassifi-

cation of that position. Unless there is a clear abuse of discretion in that regard, we may not interfere with the province of the board by means of *mandamus* or otherwise. (Mann v. Tracy, 185 Cal. 272 [196 Pac. 484].)' Otto v. Reardon, 21 Cal. App. (2d) 260, 69 P. (2d) 185."

The commission in that case contended that when a man is assigned to detective work it is a "detail" rather than a "promotion," and that there is no difference in rank between those doing detective work and those in the uniformed part of the department. The court cited with approval the case of People ex rel. O'Connor v. Girvin, 227 N. Y. 392, 125 N. E. 587. In that case relator, in 1892, having passed a civil service examination, was appointed a patrolman. In 1904, he was designated by the superintendent of police to act as detective-sergeant. He served as such until 1919, when his designation was revoked, and he was reassigned as a patrolman. Under the old law, detective-sergeants were patrolmen detailed to detective duties. They did not take a new examination nor receive from the commissioners a new appointment. The court, in the language of Judge Cardozo, said (227 N. Y. 394-396, 125 N. E. 587-588) :

"* * * They were designated by the superintendent for the discharge of special duties, just as they might have been detailed to preserve order at the court house or at places of amusement, or to render other services less rigorous than patrol duty upon the streets. Such details might be terminated at the will of the officer who made them. * * * But revocation of a detail was not reduction in rank within the meaning of the statute * * *. This conclusion would have been necessary though there had been no other expression of the legislature's purpose, for it followed as a deduction from the essential nature of a detail. * * *

"* * * Detective-sergeants thus remained what they had always been before. They were patrolmen detailed to duty as detectives. They were confirmed in the rights which were already theirs, and in no others."

So here. Relators were truck drivers who were detailed to seasonal duty as supplementary tractor drivers. The action of the commission resulted in effect to a revocation of a detail. Revocation of a detail is not a reduction in civil service status. See, also, Ablett v. Hartzer, 237 Iowa 1, 20 N. W. (2d) 877.

There is much discussion in the briefs as to whether relators have acquired civil service status in a new classification of supplementary tractor operator by reason of the fact that they had served six months each year as tractor operators. In the first place, we have determined that there is no such thing as a permanent eligible list of supplementary tractor operators, and, in the second place, there is no evidence that relators served the full six months as tractor operators. However, if there had been an eligible list of supplementary tractor operators and relators had been employed every season in the seasonal job, we do not see how the six-months provision which the parties have in mind would have any bearing on their status one way or the other.

We are not unmindful of the fact that the action of the commission results in a reduction of the income of relators. That result is unfortunate, but, as we view this case, that relators' employment as supplementary tractor operators was a detail assignment and not the creation of a new classification, it is unavoidable. The same situation presented itself to the court in State ex rel. Reilly v. Civil Service Comm. 8 Wash. (2d) 498, 112 P. (2d) 987, 134 A. L. R. 1100, *supra*.

Order reversed.