STATE EX REL. CHARLES A. SAWYER v. REINHOLD MANGNI AND OTHERS.
JOHN F. BONNER AND CITY OF MINNEAPOLIS, APPELLANTS.[1]

June 30, 1950.

No. 35,227.

---

[1]Reported in 43 N. W. (2d) 775.

*John F. Bonner,* City Attorney, and *Carsten L. Jacobson* and *Palmer B. Rasmusson,* Assistant City Attorneys, for appellants (respondents below).

*Arthur T. Nelson* and *Neil M. Cronin,* for respondent (relator below).

MAGNEY, JUSTICE.

Mandamus to compel John F. Bonner, city attorney of Minneapolis, to present to the civil service commission a requisition for the proper eligible to fill the position of first assistant city attorney, to compel the civil service commission of Minneapolis to certify respondent, Charles A. Sawyer, for employment forthwith as first assistant city attorney, and to compel John F. Bonner to appoint Charles A. Sawyer to the position of first assistant city attorney pursuant to certification by the civil service commission.

Sawyer, relator below, secured the alternative writ, directed to Reinhold Mangni, Harry P. Burgum, and Thomas O. Kachelmacher, individually and as members of the civil service commission of the

city of Minneapolis, Florence R. Dwyer, individually and as secretary of the civil service commission, John F. Bonner, individually and as city attorney of Minneapolis, Carsten L. Jacobson, and the city of Minneapolis. The proceeding against Carsten L. Jacobson was quashed. The court below made findings in favor of Sawyer and ordered the issuance of a peremptory writ. From the judgment entered pursuant to the order, John F. Bonner and the city of Minneapolis appeal.

The position of first assistant city attorney of Minneapolis became vacant June 6, 1947. On August 29, 1947, the city council adopted a resolution "that in addition to his duties as Assistant City Attorney there are hereby imposed upon Carsten L. Jacobson, Assistant City Attorney, the duties of First Assistant City Attorney." On September 15, 1947, the civil service commission notified John F. Bonner, city attorney, that in performing the duties of first assistant Jacobson was working out of classification, and demanded that Bonner correct the situation immediately. On October 10, 1947, the city council passed a further resolution fixing the salary of Jacobson at that previously received by the first assistant city attorney and providing for its continuance as long as he should perform the duties of that office. Jacobson has received the salary of first assistant since that date. At the time the city council adopted these resolutions, the civil service commission did not have an eligible list for the position of first assistant city attorney. On November 25, 1947, the commission held an examination for such position. Jacobson, an assistant city attorney, and Sawyer, a senior assistant city attorney, took the examination and were successful. On December 10, 1947, the eligible list was posted. Jacobson ranked highest on the list. Sawyer was second, but was the highest ranking veteran on the list. Bonner participated in the examination by grading the applicants as to efficiency. On December 12, 1947, Bonner requested authorization from the city council to requisition the commission for certification of an eligible for first assistant city attorney. On December 26 the council granted his request. On January 21, 1948, Bonner made a request to the attorney general

for an opinion as to whether the veterans' preference act was applicable to the position. On January 29, 1948, Bonner stated to the civil service commission at a regular meeting thereof that by February 14, 1948, he would requisition a first assistant. About February 3, 1948, he received the opinion of the attorney general that the veterans' preference act applied. He failed to requisition an eligible by February 14, 1948, as he had indicated he would, and has since said time failed to do so.

On February 16, 1948, the civil service commission passed a resolution declaring the position of first assistant city attorney vacant and ordering the secretary of the commission to withhold certification or approval of the salary of Jacobson as first assistant. On March 24, 1948, the commission notified Jacobson that he was working out of classification in performing the duties of first assistant.

As a conclusion of law on the above facts, which are undisputed, the court required that Bonner forthwith requisition the civil service commission for a first assistant city attorney; that the civil service commission, its individual members, and its secretary immediately upon receipt of the requisition from Bonner certify Sawyer as the highest eligible veteran for the position of first assistant city attorney; and that Bonner forthwith appoint Sawyer to said position. The civil service commission and its individual members and the secretary of the commission took no appeal from that part of the judgment which applied to them.

On May 18, 1948, one George T. Phillips commenced an action as a resident and taxpayer of Minneapolis to enjoin the city comptroller and the city treasurer from paying Jacobson the compensation of first assistant, to enjoin Jacobson from performing the duties of first assistant, and to enjoin Bonner from assigning to him those duties. The trial court permanently enjoined the respondents in that action as prayed for. An appeal was taken. The decision in that case (Phillips v. Brandt, 231 Minn. 423, 43 N. W. [2d] 285) and the one in the instant case will be filed together.

Appellants here, Bonner and the city of Minneapolis, contend that under the provisions of Chapter III, § 5, of the Minneapolis city charter, the matter of the appointment of a first assistant city attorney is left to the discretion of the city attorney and cannot be controlled by mandamus, and further that the veterans' preference act does not apply. Sawyer (respondent here) insists that the position of first assistant city attorney is within the classified service of Minneapolis; that a vacancy in that position must be filled in conformity with civil service provisions; and that the veterans' preference act applies.

Chapter III, § 5, of the charter provides:

"The City Attorney may appoint an Assistant City Attorney, who shall be designated as the First Assistant City Attorney, and the City Attorney may, by and with the consent of the City Council, appoint such other assistants and clerical force as may be necessary.

\*   \*   \*   \*   \*

"The City Attorney shall be the head of such legal department and shall have the control, supervision and direction of all matters of such department. \* \* \*

"The Assistant City Attorney shall assist in the legal department of the city as the City Attorney may direct and indicate, and shall be under his supervision and direction in the performance of their duties. The First Assistant City Attorney shall act as the City Attorney in the absence or inability of the City Attorney to act."

Since August 29, 1947, Jacobson has been spending a portion of his time performing the duties of first assistant. The position is a full-time position in the classified service.

Although the city council imposed upon Jacobson the additional duties of first assistant city attorney and fixed his salary in the amount previously received by the holder of that position, he did not, because of these facts, become the first assistant city attorney. Bonner himself testified, when asked, "who is the First Assistant City Attorney?" "There is none." The vacancy that was created in that position on June 6, 1947, therefore, still exists, and the con-

troversy centers on the proposition of how that vacancy shall be filled.

Based on the words "may appoint" as found in the above-quoted § 5 of Chapter III of the charter, it is the contention of Bonner that the appointment of a first assistant city attorney is discretionary with him and not mandatory as held by the trial court. He takes the position that if in his discretion he chooses to leave the position vacant he may do so, and that if he desires to fill the vacancy he has full authority to make an appointment without being prevented from doing so by civil service rules or the veterans' preference act. He insists that the requisition of an eligible for the position of first assistant is entirely within the discretionary power of the city attorney.

■ Although the term "may appoint" as found in § 5 of Chapter III of the charter is permissive in form, respondent contends that it shall be deemed mandatory. The rule applicable is stated in 6 Dunnell, Dig. § 8954, as follows:

"* * * Whenever public interests or individual rights call for the exercise of a power given to public officials, the language used in conferring the power, though permissive in form, is to be deemed mandatory."

A question similar to the one here involved arose in the late case of Cranak v. Link, 219 Minn. 112, 17 N. W. (2d) 359. Chapter XV, § 1, of the Minneapolis charter, involved in that case, provides:

"* * * The Board [Board of Estimate and Taxation], subject to the provisions of the Civil Service Chapter of this Charter, shall have power to appoint a Secretary and such other employes as it may deem necessary * * *."

There, the secretary of the board was retired because of age limitation. Because of his efficiency, the board desired to retain his services. Instead of filling the vacancy caused by this retirement, the board adopted a resolution wherein it was determined that the duties of the secretary were to be performed thereafter by a "technical consultant" appointed by the board without examination for

one year, and pursuant thereto the retiring secretary was hired as such "technical consultant" to perform the work which had previously been performed by him as secretary for said board. It was contended that the provision of the charter above quoted merely granted the board the power to appoint a secretary, but did not make it obligatory upon it to do so. Chapter XV, § 3, of the charter provides that the proceeds of the levy of taxes are required to be transmitted to the city treasurer "to be placed in the Board of Estimate and Taxation fund" and that "Warrants on such funds shall be drawn by the president and secretary of the Board and countersigned by the City Comptroller." A consideration of Chapter XV, §§ 1 and 3, above referred to, indicated to us in that case that it was obligatory upon the board to appoint a secretary if warrants on its funds were to be valid and binding; that the language requiring the secretary to sign such warrants was mandatory and not discretionary; and that it necessarily implied that there be a secretary for that purpose.

A correct interpretation of Chapter III, § 5, of the charter appears to be that if the city attorney has any assistants one of them must be designated as first assistant. The phrase "such other assistants" contemplates the prior appointment of a first assistant. The same section provides:

"* * * The First Assistant City Attorney shall act as City Attorney in the absence or inability of the City Attorney to act."

This also would indicate that it is obligatory upon the city attorney to appoint a first assistant. If no one is appointed first assistant city attorney, there is no one on the city attorney's staff who is authorized to act as city attorney in his absence or his inability to act.

It is clear to us, under the circumstances as set out, that although the language employed in conferring the power is permissive in form it must be deemed mandatory.

■ Appellants further contend that the civil service provision has no application when the appointment of a first assistant is involved, since the position is not in the classified service.

All persons in the service of the city are either in the classified service or the unclassified service. Chapter XIX, § 4, of the charter lists those in the service of the city who are in the unclassified service. The city attorney is on that list. So also is the attorney for the park board. No other attorney is mentioned as being in the unclassified service. It follows that under the charter the first assistant city attorney is in the classified service, and that his appointment and discharge are subject to the rules and regulations of the civil service commission. It is obvious that the position of first assistant city attorney is in the classified service. In the past, it seems to have been conceded or taken for granted.

■ Appellants contend that the veterans' preference law has no application to the appointment of first assistant city attorney. Although it may be argued that appellants cannot properly raise the question of the application of the veterans' preference act, since the duty which the peremptory writ of mandamus requires of Bonner is to requisition a first assistant and to appoint the person certified by the commission, we shall nevertheless consider the question, since it has been fully argued and eventually will have to be met. Under M. S. A. 197.45, subd. 2, of the so-called veterans' preference law, a qualified veteran is entitled to a preference over other applicants in appointments. Section 197.46 provides that the act does not apply to "one chief deputy of any elected official or head of a department, or to any person holding a strictly confidential relation to the appointing officer," and the appointing officer has the burden of establishing such relationship.

The first assistant city attorney is not a deputy. A deputy can execute all the ministerial duties to be performed by the incumbent of the office. Crowell v. Lambert, 10 Minn. 295 (369); Piper v. Chippewa Iron Co. 51 Minn. 495, 53 N. W. 870. A deputy may act in behalf of his principal in "all matters in which the principal may act." 43 Am. Jur., Public Officers, § 460. A principal is liable for the acts of his deputy. City of Duluth v. Ross, 140 Minn. 161, 167 N. W. 485. Under Chapter III, § 5, the first assistant acts as city attorney only in the "absence or inability" of the city

attorney. Otherwise, the first assistant works as the city attorney "may direct and indicate." It is evident from the above that the first assistant is not a deputy of the city attorney. On the basis of not being a deputy, the veterans' preference act applies. In State ex rel. Blaski v. Fisher, 194 Minn. 75, 259 N. W. 694, Blaski, a captain in the Duluth fire department, took a civil service examination for assistant chief. He was the highest ranking veteran, but was topped by two nonveterans. One of them received the appointment because of seniority in disregard of veterans' preference. It was claimed that the assistant chief position was one of a deputy. We said (194 Minn. 77, 259 N. W. 695):

"* * * When an assistant chief performs the duties of chief he does not do so as a deputy chief—there is no such office provided for—but as an acting chief by virtue of the fact that he is an assistant chief."

The veterans' preference act is also inapplicable (§ 197.46) "to any person holding a strictly confidential relation to the appointing officer." It is claimed by appellants that the position of first assistant city attorney is one of "confidential relation." The charter provision makes no distinction in the type of work done by the first assistant and the other assistants. If the position of first assistant is shielded from veterans' preference by the confidential relation clause in the act, no reason exists for not so treating the other assistant attorneys. Bonner and Jacobson in their verified answer in the Phillips case, above referred to, alleged that Jacobson as an assistant city attorney was in the classified service.

Appellants concede that for purposes of tenure the first assistant is within the classified service not as such, but as an assistant city attorney. They contend that he may be discharged as first assistant and relegated to the position of an assistant at the will of the city attorney, or, if the city attorney retires, the first assistant goes back as an assistant city attorney. Thus he would retain his civil service status as an assistant while serving as first assistant. This contention has the merit of being novel, but we fail to

see any basis for it under the civil service charter provisions, and it is certainly contrary to the spirit and intention of civil service requirements. Under this contention, a civil service employe would continue to hold the status of one position while doing the work of another position. See, State ex rel. Florrell v. Mangni, 230 Minn. 518, 42 N. W. (2d) 529, where we disapproved of a somewhat similar claimed arrangement.

In our opinion, when the position of first assistant city attorney is vacant, the city attorney must requisition an eligible from the eligible list of the civil service commission. He has no further choice if the eligible proves satisfactory during the probationary period provided for. The city charter and the civil service provisions thereof give the city attorney no voice in the selection of a first assistant. It is evident that the framers of the charter could see no confidential relationship between the city attorney and his first assistant, at least there is nothing in the city charter to so indicate. Appellants rely on the case of State ex rel. Cassill v. Peterson, 194 Minn. 60, 259 N. W. 696, in support of their contention that there is a confidential relationship between the city attorney and his first assistant. No civil service was involved in that case, and a statute which provided that the attorney general had the power to appoint and "at his pleasure remove" assistants in his office was held controlling by this court. Admittedly, the language in the Cassill case is broader than what might have been called for to arrive at the decision, but under the facts here and the charter provisions we think it has no application. The duties of first assistant city attorney as detailed in the record show no such close relationship between the city attorney and his first assistant as existed between the attorney general and the person involved in the Cassill case.

Furthermore, under § 197.46, the appointing officer has the burden of establishing a confidential relationship. No evidence was presented here to show a confidential relationship. The duties of first assistant city attorney as detailed in the record furnish no basis for holding that the relationship between the city attorney and the

first assistant are of such a confidential nature that the provisions of the veterans' preference act do not apply. According to the testimony, for many years the primary duties of the first assistant have been the handling of claims and suits arising out of personal injuries and property damage and claims under the workmen's compensation act.

■ Section 197.46 provides:

"Any person whose rights may be in any way prejudiced contrary to any of the provisions of this section, shall be entitled to a writ of mandamus to remedy the wrong."

It is an admitted fact that respondent is an honorably discharged soldier. It is furthermore apparent that his rights are being prejudiced contrary to the veterans' preference act. The remedy of mandamus is expressly given to him. Aside from this, mandamus will lie to compel an act which is clearly required by law to be done. If the person relator is attempting to force to do an act must exercise discretion in determining whether the act will be done, mandamus will not lie to coerce its performance. 4 Dunnell, Dig. & Supp. §§ 5752, 5753, and 5756. Clearly, mandamus will lie in this case to compel an act which is clearly required by law to be done.

■ Appellants contend that because of respondent's delay in bringing this proceeding in mandamus he is barred by laches. The trial court determined that respondent's delay was justified. It was not until it became evident that Bonner would not requisition a first assistant that respondent could be expected to take some action. On February 16, 1948, after Bonner had failed to requisition an eligible as he said he would do by February 14, 1948, the civil service commission took action to declare the position vacant and to withhold certification of Jacobson's salary. The Phillips case above referred to was commenced on May 18, 1948. Respondent had a hand in its instigation. He was justified in believing that the Phillips case would give him the right which he is asserting in the present case. It is now being finally determined. When it be-

came apparent that the Phillips case would not be determined prior to the expiration of the eligible list, respondent commenced this mandamus proceeding. Under such facts, we do not see how respondent can be charged with laches. Furthermore, it is not apparent that anyone has been prejudiced by the delay. The doctrine of laches is designed to promote vigilance and to discourage delay in enforcing rights. It operates to cut off stale claims of those who have procrastinated unreasonably and without excuse. Brandes v. Carpenter, 68 Minn. 388, 71 N. W. 402; Lloyd v. Simons, 97 Minn. 315, 105 N. W. 902; Sinell v. Town of Sharon, 206 Minn. 437, 289 N. W. 44; Elsen v. State Farmers Mut. Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652. It is clear that respondent has not delayed his action unreasonably and without excuse.

■ Appellant Bonner is perturbed over the finding that he intentionally deprived respondent of the appointment to the position of first assistant knowing that he was entitled to it, because of the seriousness of the consequences of such a finding. Whether Bonner knowingly and intentionally refused respondent his lawful position was not an issue in this case, and the finding in question is mere surplusage. This action seeks to compel Bonner to requisition a first assistant city attorney to fill the vacancy and to compel him to appoint respondent to this position pursuant to certification by the civil service commission. Nothing more is involved.

It is our opinion that the court correctly disposed of this matter, and the judgment is therefore affirmed.

Affirmed.

Mr. Justice Matson took no part in the consideration or decision of this case.