PER CURIAM.
The City of Miami appeals a final judgment entered in a declaratory decree class action, wherein the trial court held that certain personnel in the Corrections Division of the Police Department of the City of Miami, were entitled to the same pay as *342 police officers in the Enforcement Division of the Police Department. He also ordered the City to pay back' wages from 1961 to said employees of the “class”, and indicated that attorneys’ fees would be awarded to counsel for the plaintiffs for the establishment of a back wages fund.
The City contends that the trial court erred because of the Charter of the City of Miami,[1] which gives the power in the Civil Service Board to establish classifications of employees. Further, that the trial court erred in awarding back wages and attorneys’ fees. We reverse.
The Charter of the City of Miami provides for a classified service, which reads in part as follows:
“Sec. 62. Same — Unclassified and classified service.

“(2) The classified services shall comprise all positions not specifically included by this charter in the unclassified service. There shall be in the classified service three (3) classes to be known as the competitive class, noncompetitive class and labor class.
(a) The competitive class shall include all positions and employment for which it is practicable to determine the merit and fitness of applicants by competitive examinations.”
% Jfc % >|< 5{« %
“Sec. 63. Same — Rules; examinations; eligible lists; certifying vacancies.
“The board, [Civil Service Board] subject to the approval of the commission, shall adopt, amend and enforce a code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on merit, efficiency, character and industry, which shall have the force and effect of law; * * * ”

Pursuant to this authority, the Civil Service Board established (among others) the following employee classifications: Desk Sergeant, Prison Guard, Booking Officer, Police Matron, Sergeant of Police, Police Officer, and Policewoman. Each of the classifications requires, upon hiring or promotion, a different set of prerequisites, i. e., physical and mental tests, police academy training, different duties for each classification. No attack has been made on the power of the Civil Service Board of the City of Miami to establish the several classifications above referred to, and unless a court determines that the Civil Service Board did not follow the directives of its authorizing statute or acted arbitrarily in its classifications, a court should not interfere therewith. Whisted v. City of Philadelphia, 385 Pa. 213, 122 A.2d 723; State ex rel. Reilly v. Civil Service Commission, 8 Wash.2d 498, 112 P.2d 987; 6 Fla.Jur., Civil Service, § 6; 15 Am.Jur.2d, Civil Service, § 18; Anno. 134 A.L.R. 1103, p. 112 and cases cited therein. See: State ex rel. Reddick v. Lee, 148 Fla. 309, 4 So.2d 336; Clarke v. City of Miami, Fla.1955, 81 So.2d 217.
It is generally conceded that civil service may be reasonably classified as to positions. § Fla.Jur., Civil Service, § 6; 15 Am.Jur.2d, Civil Service, § 16; Anno. 134 A.L.R. 1103. No attack on the classifications, as established by the Civil Service Board, was made by the plaintiffs in the instant case. There being no attack on the classifications and they appearing to be reasonable, the trial court erred in holding that the plaintiffs, within the Corrections Division, were entitled to the same pay as police officers and others within the Enforcement Division.
The appellees rely heavily on this court’s opinion in Headley v. Sharpe, Fla.App.1962, 138 So.2d 536, to sustain the trial judge’s ruling. We do not find Headley v. Sharpe, supra, to be controlling herein. In the cited case, the question was simply whether cer *343 tain personnel of the City of Miami met the statutory definition in Ch. 185, Fla.Stat., to be covered under this pension and retirement act. The trial judge therein held that the parties did meet-the broad definition of § 185.02, Fla.Stat.,[2] F.S.A., and the court found that the evidence supported his ruling. The statutory definition of a police officer in Ch. 185, Fla.Stat., F.S.A., is much more liberal than the definition of a police officer as defined in the Manual of Job Descriptions of the City of Miami.[3] A person may be a police officer within the broad definition of Ch. 185, Fla.Stat., F.S.A., for pension purposes, but not a police officer within the import of the Manual of Job Descriptions of the City of Miami relating to the Enforcement Division of the Police Department. Compare Lively v. City of Miami, Fla.App.1970, 234 So.2d 411.
Because of our ruling on the major issue in this appeal, the other points raised by the appellants are moot.
Therefore, for the reasons above stated, the final judgment here under review be and the same is hereby reversed, with directions to dismiss the complaint and the cause.
Reversed and remanded, with directions.

. Ch. 10847, Acts of Florida 1925, as amended.

. “185.02 Definitions. — The following words and phrases as used in this chapter shall have the following meanings, unless a different meaning is plainly required by the context:
(1) ‘Police officer’ means full-time police officers who receive compensation from municipal funds of any incorporated municipality of the state for services rendered.”

. “Police Officer — Nature of Work.
“This is general duty police work in the protection of life and property through the enforcement of laws and ordinances of the City of Miami.
“Work involves the responsibility for performing routine police assignments which are received from police officers of superior rank. Work normally consists of routine patrol, preliminary investigation, and traffic regulation and investigation duties in a designated area on an assigned shift, which may he performed in cruiser cars, motorcycles, or on foot. Work may involve an element of personal danger and employees must be able to act without direct supervision and to exercise independent judgment in meeting emergencies. Employees of this class may receive special assignments as a plainclothes investigator, accident investigator, administrative aide for a section, procedures analyst in the research and planning section, and reports analyst; and to assist complaint room sergeant in the services bureau which call upon specialized abilities and knowledges usually acquired through experience on the force. Assignments and general instructions are received from a superior officer, who reviews work methods and results through reports, personal inspection, and discussion.”
* * sf! * SN