52 So.2d 333 (1951)
JOHNSON
v.
TRADER et al.
JOHNSON
v.
CITY OF PENSACOLA et al.
Supreme Court of Florida, en Banc.
May 4, 1951.
*334 Jones & Harrell, Pensacola, for appellant.
F. Churchill Mellen, Pensacola, for appellees.
TERRELL, Justice.
We are confronted with two appeals in this case, one from a final judgment denying a petition for declaratory decree and the other from a judgment denying peremptory writ of mandamus. Both raise identical questions and will be disposed of in one opinion.
For more than two years prior to December 15, 1949, appellant was a member of the police department and the Civil Service of the City of Pensacola, hereinafter referred to as the City. Prior to the date last named, appellant with knowledge of the City Manager, Chief of Police, City Council and Members of the Civil Service Board, secured a State, County and City license to engage in the sale of alcoholic beverages. He secured a five year lease on property at the corner of de Villiers and Garden Streets and the City Council passed an ordinance authorizing him to engage in the sale of alcoholic beverages on the leased premises. He took possession at once and put out a large investment in the stock of beverages, fixtures, State, County and City licenses.
After he commenced business the city council attempted but failed to pass an ordinance prohibiting any member of the Civil Service from owning or being employed in any place where alcoholic beverages are sold. On March 1, 1950, after due notice the Civil Service Board adopted a regulation known as Section 6, Rule 13 of the Civil Service, the pertinent part of which is as follows:
"1. No member of the Civil Service shall engage in any other activity or enterprise inconsistent or incompatible, or in conflict with his duties as a City employee.
"2. No member of the Civil Service shall engage in or hold any interest in any business engaging in the sale and distribution of alcoholic beverages.
"3. City employees in the Civil Service may engage in part time or occasional employment or occupation out side of their regular working hours if such employment will not interfere with the efficient performance of their duties for the City."
*335 May 1, 1950, notwithstanding his license and ordinance of the City authorizing him to sell alcoholic beverages, the Civil Service Board notified appellant to dispose of his business within 90 days. Coeval with the notice to dispose of his business, appellant was given a leave of absence without pay to determine whether he preferred to continue in the liquor business and leave the police service or dispose of the liquor business and return to the police service. Prior to the expiration of his vacation he notified the City Manager that he desired to return to the police service and that he had made every effort possible to dispose of his business at cost but had been unable to do so.
June 30, 1950, the City Manager suspended appellant from the police service, preferred charges against him and recommended that his suspension be made permanent. Section 6, Rule 13 previously quoted, was the basis for the City Manager's action. This proceeding was instituted July 13, 1950 by petition for declaratory decree. Answer was filed challenging the validity of Section 6, Rule 13, the main contention being that even if it could be upheld it should not be enforced against appellant. On final hearing the court upheld the rule and enforced it against appellant. He also denied peremptory writ of prohibition in the companion case which had a like effect on appellant. Appeals were prosecuted in both cases and they were consolidated in this court.
Stripped bare of legalistic polemic the point for determination is whether or not the Civil Service Board had power to enact Section 6, Rule 13 and in view of the circumstances recited, enforce it against appellant.
Summarized Section 6, Rule 13 inhibits members of the civil service from engaging in the sale of alcoholic beverages or participating in any other enterprise in conflict, inconsistent with or incompatible with their duties as a city employee. Appellant contends that since the city sold him a license to engage in the sale of intoxicating liquors and passed an ordinance zoning his leased premises in order that he could do so, the rule is arbitrary and unreasonable as to him, that it amounts to confiscation or forfeiture of his property and deprives him of valuable rights acquired as a Member of the Civil Service.
We cannot reconcile some phases of the City's dealing with appellant in this matter. It is a fact revealed by the record that the City sold appellant a license to engage in the business of selling intoxicating liquors, it then zoned the area where he acquired his lease in order that he could engage in that business without violating the law, it gave him a leave of absence so he could engage in the liquor business for a season and determine which he preferred  the liquor business or his job with the City as a policeman. It then adopted Section 6, Rule 13, making it illegal for appellant or any City employee to engage in the sale of alcoholic beverages, suspended appellant for doing so, and preferred charges against him (1) for misconduct in obtaining a fraudulent leave of absence, (2) for neglect of duty in that he remained away from duty for sixty days after securing a fraudulent leave of absence, (3) for keeping and conducting a business of such character as to place him in a compromising position as a police officer.
In explanation of its curve pitching to appellant, the City says that the suspension from the service and the charges against appellant were preferred after he was given four months to decide whether he would hold to his liquor business and resign from the police force or dispose of his liquor business and return to the police force. There is not explanation of his "fraudulent leave of absence" or "remaining away from duty sixty days after obtaining a fraudulent leave of absence." We find nothing whatever in the record to support these charges. On the other hand the record shows that the leave of absence was voluntarily granted by the City and that there was no misconduct, neglect of duty or fraud whatever on appellant's part.
But despite the oblique conduct of the parties, we think Rule 13 was a lawful exercise of the Civil Service Board's power. The City Charter is embraced in Chapter 15425, Special Acts of 1931, and Chapter 16867, Acts of 1935. Both Chapters have *336 to do with the Civil Service, they provide for its governance and authorize the Civil Service Board to make rules for promoting the efficiency of the service. We think it is a reasonable regulation and we do not construe it to act retroactively on appellant, it would not be permitted to do so if it did.
Why the City would grant a policeman the privilege of engaging in the liquor business is not explained. It is a business that requires more strict police regulation than other businesses, it necessitates a greater degree of diligence on the part of the police force than is required to police other businesses and it is contrary to all human experience to contend that a policeman who is charged with the duty of policing all businesses, would not be accused of favoritism when he owned and operated one or more of the businesses he is required to police.
It does not require a keen sense of perception to realize that if policemen are permitted to engage in the liquor and other businesses licensed by the City, charges of partiality and discrimination will sooner or later be lodged against them. When this is the case confidence in municipal government vanishes. In a democracy like ours, it is highly important that those who administer the law do so honestly and impartially and thereby inspire public confidence in its administration. This cannot be done by other means than old fashioned honesty and square dealing. Government at any level is the people's business and they are entitled to have it conducted uprightly. The history of law administration by favorites and old cronies has been one of laxness and incompetency. They do not think, act or speak in terms of all the people but proceed on the theory that they have a duty to take care of their benefactor, a complete verification of the old proverb  "Whose bread one eats, his song he will sing."
Employment in the civil service or any other branch of political service is at all times subject to reasonable regulation in the interest of the public. Changing conditions in the multitude of services that the various political entities are constantly assuming make new regulations and changes necessary and while all employees hold their positions subject to such changes and regulations, it is equally as fundamental that they cannot be discriminated against or discharged except for cause after notice and an opportunity to be heard. Notice and a chance to be heard is one of the bed rocks on which democratic government rests. Because of this emphasis on personal rights those in authority are not permitted to peremptorily cut a man's head off and strike him from the pay roll with the ease and assurance that they would heave a dead cat over the fence. There is too much totalitarian flavor in such a practice.
We have examined Brown v. Foley, 158 Fla. 734, 29 So.2d 870 and other cases relied on by appellant, but we do not think they rule the case at bar, neither do we think the Civil Service Board was estopped to enact Rule 13. Provided the rights of appellant are preserved in the manner hereinafter defined. The public welfare rises above other considerations and the rule does nothing more than exact loyalty and responsibility on the part of appellant and other employees to their employment. There is nothing arbitrary or unreasonable about this. Any arm of a municipality would be inordinately handicapped if it could not enforce reasonable regulations to require competency, devotion to duty and a feeling of responsibility to the government that employs them.
So much for the first phase of the question presented. Now let us discuss the second phase briefly. Just how and where the enforcement of the rule against appellant should begin is a more delicate question. The manner in which the transaction between appellant and the City has been handled and the fact that appellant has acquired valuable rights under Civil Service in the way of retirement and pension are the elements that determine this point. Under the circumstances appellant should be given a chance to present these rights. Enforced authority against the individual is a delicate problem under any system of administrative law. A leading commentator says that it is a problem of *337 balance, "too little liberty brings stagnation, and too much brings chaos." In this case to press appellee's attitude against appellant would lead him in the direction of chaos, while to press appellant's attitude against appellee might lead it to stagnation. There must be a just mean between these extremes. If City employees generally are permitted to engage in private business inconsistent with their employment, the City's business is bound to suffer. While the welfare of all must be the dominant note of democratic society the best test of the manner in which it dispenses justice must be determined by the treatment that single individuals and minority groups receive at its hands. General welfare is never accomplished when justice to the individual or weak minorities is ignored. In dealing with appellant we think the City has overlooked this, for which he should be given a reasonable time to either dispose of his business or return to the police force.
The judgment appealed from is accordingly affirmed on condition that the City amend Section 6, Rule 13, of the Civil Service to give appellant ample opportunity to dispose of his business in the event he elects to do so and return to the police service. The rule will not be permitted enforcement against appellant in its present form, neither should he be permitted to hold to his job in the police service and continue in the liquor business indefinitely but the rule should provide ample time within which he may elect which course he will pursue. If he elects to return to the police service he should be reinstated without question.
Affirmed on condition.
SEBRING, C.J., and CHAPMAN and HOBSON, JJ., concur.
THOMAS, ADAMS and ROBERTS, JJ., dissent.
THOMAS, Justice (dissenting).
Regardless of the merits of the rule eventually promulgated I cannot agree to the decision because of my conviction that the city by its actions became estopped from applying the rule to appellant.
ADAMS, Justice (dissenting).
I am of the opinion the decree should be affirmed.