PER CURIAM.
This is an appeal from an order of the trial court transferring the appellees from a general employees pension plan in the City of Miami to a retirement plan governing police and firemen. We reverse.
Appellees filed their complaint as a class action seeking a declaratory decree. The complaint alleged that the appellees are employees of the Identification and Records Bureau of the city’s Police Department, and that their duties parallel those of police officers in the department. Therefore, appellees requested the court to place them under Plan 3A2, pertaining to police officers. Appellees stated that they previously were members of Plan 1A1, applicable to general employees.
At a hearing, five witnesses testified, three for the appellees and two for the appellants. Mr. Robert Vollmer, appellee Musial’s predecessor as supervisor of identification and records, testified that he was hired by the city in 1937, initially as a substitute fireman, and placed in the now defunct “two per cent group” plan. In 1940, a new retirement system was initiated, and Mr. Vollmer was put under the new “police pension plan.” When he retired, Mr. Vollmer received his pension as a retired police officer. Mr. Vollmer testified that during his employment he carried a gun, a badge, a police identification card, made arrests and was required to shoot on the police range.
Mr. Ralph Parks, an accountant for the City Retirement Board and a witness for the appellees, also testified that members of the 1A1 Plan, unlike those under 3A2, are covered under Social Security and the city makes contributions in their behalf.
Mr. Musial then testified that he occupied the position formerly held by Mr. *79 Vollmer and that he performed similar duties, except that when this lawsuit was instituted his gun and the weapons carried by the other members of his bureau were taken away. Mr. Musial stated that he now wanted “the same benefits afforded to me that were given to others who were hired at the same time and required to meet the same age specifications and so forth that I was required to meet at the time.” Mr. Musial testified that he had been hired in 1947, as a complaint dispatcher where he served for eight months, and thereafter worked in the identification unit. The 1A1 General Employees Plan came into being in 1956, and Mr. Musial said he had no choice but to be assigned thereunder, and he took no steps to apply to the city retirement board or to sue in circuit court for a different classification at that time. Following Mr. Musial’s testimony, counsel for the appellees announced to the court that further testimony by members of the identification unit would be cumulative, and the appellees rested their case.
The city then called its two witnesses, Joe Yates, Executive Secretary of the City Civil Service Board, and Kenneth Fox, Assistant Chief of the City of Miami Police Department. Mr. Yates testified that the maximum age limit for policemen is thirty-four, but there is no such limit with respect to identification unit personnel. Mr. Yates responded to an inquiry regarding further differences in the following manner:
“Police officers require that the applicant be five foot eight. There is no height requirement for identification personnel.
“Police officers must take the athletic test which is not required by identification personnel.
“Police officers must attend the Police Academy. That is not a requirement for identification personnel. They take a different entrance examination.
. “They have a different medical requirement such as vision 20/30 correctible to 20/20, for a policeman and it is 20/40 without correction for identification personnel
“Police officers must prove graduation from high school and no waiver can be granted under the. state law where identification personnel do not have to prove and can be hired with waivers of education.
“Identifications personnel do not have to compete with seniority choice vacations with police officers and are considered separate and apart from there.
In addition, Mr. Yates said police officers job duties are defined differently, classifying police work more directly under the protection of life and property. Identification personnel are charged primarily with the responsibility for taking photographs, record keeping and securing evidence for court cases.
The testimony of Chief Fox, a policeman for twenty-three years, consisted for the most part of his opinion as to the differences in duty and job status between police officers and identifications unit personnel. Fox noted that policemen respond to calls of all nature in the first instance, whereas “I.D. technicians” respond to an officer who needs assistance at a crime scene. Fox stated, “The officer handles the investigation. The technicians provide services to him.”
Following the hearing, the trial court entered the order herein appealed finding that Mr. Vollmer was granted benefits under Plan 3A2 and that the testimony indicated that the appellees did in fact perform police functions within the meaning of Chapter 185, Florida Statutes, F.S.A. The court concluded that the appellees had proven the allegations of their complaint and awarded the relief requested.
The trial judge relied upon this court’s holding in Headley v. Sharpe, Fla.App. *80 1962, 138 So.2d 536, wherein this court held that employees in the City of Miami Jail met the statutory definition of police officers as defined by Fla.Stat. § 185.02 (1), F.S.A. This chapter governs the Municipal Police Officers Retirement Trust Fund.
In City of Miami v. Rumpf, Fla.App. 1970, 235 So.2d 341, this court distinguished Headley, when certain employees in the Corrections Division sought equal pay with police officers in the Enforcement Division. We noted that the statutory definition of police officers in Chapter 185 is more liberal than that in the Manual of Job Descriptions of the City of Miami. In Rumpf, we also stated that civil service positions are subject to reasonable classification by a city. We do not think that the city has abused its discretion in classifying police officers and members of the identification and records bureau differently under its own pension system. See 6 Fla.Jur., Civil Service, § 6; 15 Am.Jur.2d, Civil Service, § 16.
The fact that Mr. Vollmer was classified as a police officer we find to be irrelevant to the classification which ap-pellees received when Plan 1A1 was formed sixteen years later. Generally, a city may make reasonable changes in its civil service which due to changing conditions are found to be necessary. Johnson v. Trader, Fla.1951, 52 So.2d 333; City of Miami Beach v. Weichelt, Fla.App.1959, 115 So.2d 180.
Moreover, assuming arguendo that other members of the Identification and Records Bureau were entitled to be classified as police officers under the city’s pension plan, we observe that Mr. Musial took no action to seek a reclassification from his Plan 1A1 status (under which he received Social Security coverage) to the 3A2 Plan until thirteen years after the former plan came into existence. In this posture, we think Mr. Musial is now barred by the equitable doctrine of laches from proceeding against the city. Ladas v. Titus, Fla.1951, 53 So.2d 323; State ex rel. Balma v. Evans, Fla.App. 1958, 107 So.2d 620; City of Miami v. Kellum, Fla.App. 1962, 147 So.2d 147.
We have considered appellants’ other points, however, we find that it is unnecessary to reach these questions in light of our determination that members of the Identification and Records Bureau are not entitled to be placed under Plan 3A2 of the City of Miami.
Therefore, for the reasons stated and upon the authorities cited, the order appealed is reversed.
Reversed.