Joseph A. Gavagan, J.
By this article 78 proceeding, the petitioner seeks to compel the respondents to fill, by competitive examinations, the positions in the New York City Police Department, of Deputy Inspector, Inspector, Commanding Officer (Detective Division), Deputy Chief Inspector, Assistant Chief Inspector, Supervising Assistant Chief Inspector, Chief of Staff, Chief of Detectives and Chief Inspector. It is petitioner’s claim that these positions should not be filled by the Police Commissioner by supervisory designation from the rank of Police *83 Captain but that these positions which have always been filled by the Police Commissioner from the rank of Police Captain, should be filled by way of civil service competitive examination.
Petitioner is a retired Police Captain. He rose in the ranks by promotional examination. He argues that merit and fitness are the criteria for promotion in civil service, that out-of-title work is proscribed and that an incumbent may not be permitted to perform any duties unless he has been previously tested to perform such duties. He further contends that the higher salaries and duties of the afore-stated positions above the rank of Captain constitute a promotion and therefore should only be made after competitive examination. Petitioner cites for his support section 6 of article V of the New York State Constitution, which provides that “ Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ”, Moreover, that subdivision 8 of section 52 of the Civil Service Law provides that no person shall be promoted to a position or title involving qualifications different from or higher than those required for the position or title held by such person, unless he has passed the examination. Subdivision 9 of said section 52 provides that an increase in the salary beyond the limit fixed for the grade “ shall be deemed a promotion.” Subdivision 2 of section 61 proscribes out-of-title work. The issue is therefore drawn by petitioner that since all of the positions above the rank of Police Captain involve duties different and higher than those required or fixed for Police Captain, that they should be filled by promotional examination; that any advancement above Police Captain is a promotion which violates the State Constitution and Civil Service Law. Petitioner cites for support the cases of Matter of Williams v. Morton (297 N. Y. 328); Matter of Carolan v. Schechter (5 Misc 2d 753, affd. 8 A D 2d 804, affd. 7 N Y 2d 980) and others. I am also aware of and studied the recently decided case of Matter of Niebling v. Wagner (12 N Y 2d 314) by the Court of Appeals which is decided upon the holding made in the Carolan case (supra).
However, I am constrained after a study of the cited cases, and the issues presented in the instant case, that the petitioner’s position and cited cases are inapplicable to the particular facts here. The petitioner’s contention, in the ease at bar, that the designation of Police Captain to the higher ranks is tantamount to a promotion to the performance of illegal or out-of-title work, is controverted and negated by section 434a-13.0 of the Admin *84 istrative Code of the City of New York and other applicable statutory provisions which carry no preclusion against the city’s right to pay higher salaries and to designate Captains in the Police Department to perform unlimited duties without the need of promotional examinations. And this is not in contravention of the Civil Service Law which prohibits performance and assignment to out-of-title work or to a grade or rank in violation of Civil Service Law. The applicable provisions are subdivision 2 of section 61 of the Civil Service Law and sections 883 and 884 of the New York City Charter. However, section 434 of the New York City Charter provides, as follows:
“ § 434. Commissioner; powers and duties.—
“ a. The commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department and of the police force of the department.
‘ ‘ b. The commissioner shall be the chief executive officer of the police force. He shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department. ’ ’
The Bules and Begulations of the Police Department (now part of the Bules and Procedures) provide:
“ 1. The Police Commissioner shall have cognizance and control of the government, administration, disposition and discipline of the Police Department, and of the Police Force of said department.” * * *
‘ ‘ 402. Unless otherwise provided in these Bules and Begulations, a member of the force shall be detailed or assigned as directed by the Police Commissioner only.”
In addition to the afore-stated, the city’s right to specifically designate Police Captains to perform functions of the ranks above that of Police Captain is specifically provided in section 434a-13.0 of the Administrative Code, as follows: “ Promotions.— a. Promotions of officers and members of the force shall be made by the commissioner, as provided in charter section eight hundred thirteen, on the basis of seniority, meritorious service and superior capacity, as shown by competitive examination, but a detail to act as inspector, or to service in the detective bureau, as hereinafter provided, shall not be deemed a promotion.” (Italics added.)
Going on to subdivision c of the same section, we find that the Commissioner is empowered to “ in the exercise of his discretion, from time to time, detail nineteen captains and so many others as the board of estimate upon the recommendation of the mayor and the commissioner may authorize to act as inspectors, with the title, while so acting, of inspectors of police and at his *85 pleasure may revoke any and all suck details.” The respondents’ papers submitted herein, amply demonstrate the reasons and rationale behind the grant of such discretionary authority to the Police Commissioner. The very nature of the work and duties of policemen and the Police Department, sensitive and confidential in nature, require such. In Matter of Shea v. State Racing Comm. (263 App. Div. 783) it was stated that assignments of a confidential nature are often made on a noncompetitive basis because of the sensitive nature of the responsibilities. However, Police Captains attain their rank as such through the competitive service. They have to pass four different promotional examinations to reach that of Police Captain, which is the highest ungraded status. Although they achieve the highest competitive status as Captain, they nevertheless cannot be promoted or demoted in respect to grade, since they always remain in ungraded positions. Therefore, an employee in any ungraded part of a competitive class need not take any promotional examination as a condition of qualifying for a higher salary. A similar detail of authority was recently granted by the Legislature to the Transit Authority, by the amendment of subdivision 16 of section 1204 and section 1210 of the Public Authorities Law. These laws enable the appointing head of the Transit Authority to specifically designate members of their police service occupying fixed and graded positions, to higher ranks, without promotional examination, and with the concomitant right of revoking such designations, without reason. Accordingly, I find untenable petitioner’s contentions that the respondents’ actions here are violative of constitutional or legislative intendment. Again, respondents’ presentment here amplifies the reasons and rationale for the respondents’ position and grant of discretionary power to the Police Commissioner. The unlimited nature of the grade and rank of Police Captain, supported by the historical background which gave rise to the present law which permits such higher designations without additional written competitive examination, negates petitioner’s arguments which urge such examination. In view of subdivision a of section 434a-13.0 of the Administrative Code, aforementioned, it is unnecessary to consider the “practicability” of examinations for these higher ranks. Obviously, the Legislature found no incompatibility between the constitutional merit and fitness requirements and its enactment of subdivision a of section 434a-13.0. In addition, the recent grant of identical authority to the Transit Authority, as hereinbefore pointed out, which enables the Authority to make similar designations at increased pay, to graded employees, again negates petitioner’s *86 arguments that the legislative intendment is at variance with its responsibility under the Constitution (Public Authorities Law, § 1204, subd. 16; § 1210).
Experience has proven that innumerable positions have been placed in the exempt class because these positions do not lend themselves to competitive testing. To that end, because in certain categories of positions examinations are impracticable, or undesirable from the viewpoint of public interest, exempt appointments are made permitting the appointing authority to remove incumbents at will. However, in the instant situation, the New York Civil Service Commission did not have to determine that it was impracticable to hold examinations because the Legislature made that determination in the plain language set forth in the Administrative Code. In other instances has the Legislature recognized the impracticability of further examinations for these higher police ranks. In the Wicks Act (L. 1939, ch. 927), the Legislature provided that employees of privately operated subways acquired by the City of New York, should be continued in the service of the Board of Transportation and classified in the noncompetitive class. The constitutionality of this legislative determination, that competitive examination was not practicable in this instance, was sustained (Matter of Felder v. Fullen, 27 N. Y. S. 2d 699, affd. 263 App. Div. 986, affd. 289 N. Y. 658 [1942]), Further evidence of the Legislature’s recognition of the impracticability of further examinations for these higher police ranks, is reflected in the editorial comment of the New York Times as far back as 1906 where the following is stated: “We think that all will agree that it would immensely strengthen the hands of a resolute Commissioner if he could reduce the higher officers, the Inspectors, to the rank of Captain, not necessarily as a penalty, but at his discretion, for the good of the service. The rational, logical, inevitable supplement to this power should be that of detailing Captains, at discretion, to act as Inspectors, with pay and rank accordingly while the detail holds,” (Emphasis mine.)
In the New York Sun of November 26, 1906, the following appeared: “An honest and capable man in the office of Commissioner of Police would have comparatively little difficulty in managing the men under him if he had the power to ‘ hire and fire ’ his subordinates.”
In a presentment handed down by the November Grand Jury (1906) in General Sessions, there was contained the following recommendation: “ The law should also be amended to empower the Commissioner of Police to abolish the Detective Bureau as *87 now constituted, and to enable him to make detective service entirely a matter of detail by executive order.”
In an editorial from the then New York Globe (Dec. 15, 1906) the following was said: “It will be admitted, we think, that the late George William Curtis was a devoted friend of Civil Service reform and was not in favor of legislation that would break down the system. Over and over again Mr. Curtis opposed taking away from executive officers discretion concerning the removal of subordinates. Yet proposals partially to restore this discretionary power to the police commissioner of New York are attacked as treason to the merit system.” (Emphasis mine.) When the law was passed which placed the New York Police Department under civil service rules this difference between appointment and removal was not sufficiently recognized. It was assumed that if appointment should only be for merit, removal should not occur except for proved demerit. So, in effect, control of the department in a most vital respect was taken away from its chief. The public held him responsible for the conduct of police affairs but unless he could prove a specific offense to the satisfaction of a reviewing court, he could do nothing toward enforcing discipline except to lecture the men and, as a last resort, transfer them from a precinct they liked to one they did not like.
The editorial criticism of that day reflected the public interest that a Police Commissioner be given arbitrary power, if need be, to reduce incompetent or dishonest Inspectors back to the rank of Captain and that the Commissioner be afforded his choice and discretion in those areas of executive conduct which call for close liaison between a Commissioner and his top echelon. Experience has proved the need for the changes that were made to effect this need as enacted into the laws hereinbefore stated, which clearly grant the Police Commissioner the exclusive power to designate Police Captains to higher ranks without further competitive examination. The history of these positions supports the legislative mandate that it would be impracticable to require examinations or to restrict the Police Commissioner’s power to select or demote designees in the exercise of his discretion.
Petitioner’s arguments that the increase of pay, which goes with such designations, is illegal and violative of law, are untenable. The payment of additional compensation to Police Captains who have been designated and detailed to positions which call for the performance of higher services, within the ranks challenged by petitioner, does not constitute an unlawful promotion. This is so because Police Captains occupy imgraded *88 positions. Subdivision 9 of section 52 of the Civil Service Law defines a promotion as “ an increase in the salary or other compensation * * * beyond the limit fixed for the grade in which such office or position is classified ”. Paragraph 5.3.8 of section III of rule V of the Rules and Regulations of the City Civil Service Commission of the City of New York (eft. June 17, 1959) provides: “ An increase in the salary or other compensation of any person holding an office or a position in the competitive class beyond the limit fixed for the grade of such position in the classification rules or an advancement from one rank to a higher rank shall be deemed a promotion. ’ ’
The term ‘ ‘ Rank ’ ’ denotes ‘ ‘ the order or standing of a position with reference to the degree of its responsibilities ” (rule I, par. 1.10). The term “ Grade ” denotes “ the order or standing of a position with reference to the full-time annual compensation attaching to it ” (rule I, par. 1.11). The position of Police Captain is ungraded. Accordingly, since there is no salary limit, there cannot be a salary increase beyond the “ limit fixed for the grade.” Under such circumstances, the payment of higher salaries, as encouragement to employees performing duties of a more onerous and important nature than those performed by others, does not constitute a promotion (Matter of Mandle v. Brown, 5 N Y 2d 51; Matter of Amann v. Finegan, 253 App. Div. 364; People ex rel. Stokes v. Tully, 108 App. Div. 345).
By paragraph 10.4.1 of section IV of rule X of the Civil Service Rules, it is provided that “ The service, titles and grades, if graded, of positions in the competitive class subject to this rule are as follows # * *: The Police Service, Patrolman, Assistant Superintendent of Telegraph, Sergeant, Surgeon, Lieutenant, Captain, Veterinarian, Superintendent of Telegraph.”
Only the service and titles are listed. Nothing is stated to indicate grading. Indeed, there is confirmation of the absence of grading. Accordingly, I conclude that petitioner here has no basis for his argument either that the position of Police Captain is graded or that additional compensation may not be granted, because subdivision a of section 434a-10.0 of the Administrative Code provides that the salaries of officers and members of the police force “ shall be as follows ” for Captains. The latter provision only refers to the minimum of the salary but does not delimit the scope of the salary. Section 67 of the New York City Charter confers upon the Board of Estimate the power to fix salaries “ except as otherwise provided in this charter or by statute ”. Administrative Code section 434a-10.0 modifies this broad power, but only to the extent of imposing a minimum. So that it is manifest that the statute is designed to *89 protect police officers to the extent of fixing an amount below which their salaries may not be reduced, but it does not set an upper “limit” which the Board of Estimate must observe. The long-established policy of the City of New York of awarding to Captains higher pay in ungraded positions when they are given more important assignments in higher ranks or when they are detailed as commanders of detective squads, has been recognized that details to these higher ranks do not constitute promotions (People ex rel. O’Connor v. Girvin, 227 N. Y. 392; Madden v. City of Stockton, 175 Cal. App. 2d 893; Matter of Mandle v. Brown, 5 N Y 2d 51). In Matter of Mandle v. Brown, the court stated (p. 62): “A promotion is defined by Civil Service Law (§ 16, subd. 7) as ‘ an increase in the salary or other compensation of any person holding an office or position * * * beyond the limit fixed for the grade in which such office or position is classified ’. Under this definition, attorneys in former grade 4 could be assigned the higher salaries — since there was no ‘ limit ’ fixed for the grade — without such constituting promotions (see Matter of Sanger v. Greene, 269 N. Y. 33; Matter of Crosby v. Board of Educ., 187 App. Div. 205, 209-210, affd. 226 N. Y. 705; People ex rel. Stokes v. Tully, 108 App. Div. 345, 351).”
Accordingly, in light of the afore-stated facts and applicable law, I am of the ultimate determination that petitioner’s position here is untenable. The application is denied and the petition is dismissed.