Breitel, J.
In a certiorari proceeding by petitioner taxpayer to obtain an old age residential real property tax exemption, the city assessor appeals. The issue is whether “ income ” for purposes of qualifying for the exemption includes return of capital and whether deductions may be taken for capital losses and depreciation of income-producing real property.
The Supreme Court dismissed the petition. The Appellate Division unanimously reversed with an opinion, directing that the exemption be granted.
The Appellate Division order should be affirmed. Although petitioner was not entitled to a depreciation deduction, from net rental income, she was entitled to offset her capital gains with her capital losses. Moreover, return of capital would not be “ income ” for purposes of the statutory exemption. Thus calculated, petitioner's “ income ” for tax year 1969, a preceding 12-month period used in determining the 1971 real property tax, was $3,507.85, qualifying her for a partial exemption from real property tax.
The enabling statute, section 467 of the Real Property Tax Law (L. 1966, ch. 616, as amd. by L. 1970, ch. 291), then provided that, subject to certain conditions, the residence property of persons 65 years or older “1. * * * shall be exempt from taxation by any municipal corporation in which located to the extent of fifty per centum of the assessed valuation thereof ”, Subdivision 3, however, provided that “ 3. No exception shall be granted (a) If the income of the owner * * * exceeds the sum of three thousand dollars, or such other sum not less than three thousand dollars nor more than five thousand dollars as may be provided by the local law ”. Subdivision 3 also provided that “ income shall include social security and retirement benefits, interest, dividends, net rental income, salary or earnings, and net income from self-employment, but shall not include gifts or inheritance.” The City of Niagara Falls duly enacted a local law establishing the sum of $3,600 as the maximum permissible income, for eligibility.
*240 Petitioner’s application for the exemption was denied solely because, by the calculation of the city assessor, her income exceeded $3,600.
During the 1969 táx year, petitioner received $406.14 as a return of investment from a mutual fund. The assessor classified this sum as “ dividend income ”.
Petitioner also received a capital gain of $240.65 from this mutual fund, but in the same year incurred a capital loss of $366.71 from the same investment. The assessor included the capital gain as “ income ”, and did not allow a corresponding deduction for the capital loss.
Petitioner received a total of $1,382.12 from two annuities, 22.1% of the annual payments made ($305.64) being taxable income, the balance representing for tax purposes the return of her investment in the contract. The assessor treated the entire sum received as “ income ”.
Finally, the assessor asserted that petitioner had received $217 “ net rents ” from the rental óf a room in her home. Petitioner, however, claimed a depreciation deduction Of $250, giving her a net rent loss of $33.
If the assessor improperly classified some or all of these various items, then petitioner was entitled to the section 467 exemption under the local law.
While an exemption statute is to be construed strictly against the taxpayer, the interpretation should not be so narrow and literal as to defeat its settled purpose (People ex rel. Watchtower Bible & Tract Soc. v. Haring, 8 N Y 2d 350, 358). The purposes of the old age property tax exemption was “ to help elderly persons living on small fixed incomes to remain in their homes despite increases in real property taxes, especially taxes for school purposes ” (Governor’s Memorandum of Approval, L. 1966, ch. 616; N. Y. Legis. Annual, 1966, p. 346).
Appellant assessor contends that the Legislature, by enumerating various types of income, intended to base the income limitation on “ cash inflow ” rather than “ income ” as defined for either Federal or State incomé tax purposes. The Legislature expressed no intention of incorporating the Federal or State tax rules into the exemption statute. Absent direction to the contrary, the term “ income ”, as used in the particular statute, *241 must be judicially construed. That construction must be an accommodation between a common understanding of the term and the legislative purpose, however indefinitely projected by the statutory language. The term “ income ” has no fixed meaning and it is evident that section 467 by its listing of types of income did not intend to use the term “ income ” in any classic sense, if there be one, in the law of income taxation. On the other hand, it is equally obvious that a cash flow concept was not intended and if unqualified would result in unjust application of the statute.
A transfer, return, or redelivery of capital is not income (see Southern Pacific Co. v. Lowe, 247 U. S. 330). Both in economics and in law the terms capital and income are generally mutually exclusive, although to be sure “ capital gains ” may be taxable as income in whole or in part. Capital represents an accumulation of assets from which income may be derived. And it happens that a return of capital has been excluded from income for tax purposes.
Whether capital gains, realized or not, are analytically income or not is a much more difficult question, both in economics and law. It suffices that since the Great Depression capital gains are taxable under the income tax laws, and it may be assumed, therefore, that the statute contemplated using the term “ income ” to embrace what is currently taxable, at least in part, as income (see 22 Opns. St. Comp., 1966, p. 928 ; 85 C. J. S., Taxation, § 1097, subd. g; cf. Internal Revenue Code, § 61, subd. [a], par. [3]; U. S. Code, tit. 26, § 61, subd. [a], par. [3]; N. Y. Tax Law, § 612). But in so assuming it is only fair to carry the assumption further and offset capital gains with capital losses as do the tax laws (see, e.g., Internal Revenue Code, §§ 165, 1211,1212; U. S. Code, tit. 26, §§ 165, 1211, 1212; N. Y. Tax Law, § 612).
The more troublesome question in the case is.whether “ net rental income ” as used in section 467 should be determined after deductions for. depreciation. It is suggested that, contrary to the view taken by the Appellate Division, there should be no such deduction. Depreciation for accounting, economics, and purposes of income taxation is a theoretical calculation to accumulate a hypothetical fund to replace the capital asset pro- *242 during the income. There may or may not be a real depreciation reserve fund. Depreciation may or may not be offset by capital appreciation, whether or not realized. In any event, none of these purposes may be relevant to the purpose of section 467 in measuring the ‘ ‘ income ’ ’ of the elderly, particularly since, other things being equal as the economists say, theoretical depreciation (as distinguished from physical depreciation or deterioration) may not reflect any lessening of income over the theoretical life of the income-producing asset. There is an additional difficulty. There are so many widely different ways of computing depreciation for economic, accounting and income taxing purposes, that no easy standard lies at end.
Moreover, it might be noted that as early as September, 1967, the State Board of Equalization and Assessment issued an opinion letter stating that depreciation was not deductible from •net rental income for purposes of the section 467 exemption. Most of the municipal assessors apparently followed this advice. Where the practical construction of a statute is well known, the Legislature is charged with knowledge and its failure to interfere indicates acquiescence (RKO-Keith-Orpheum Theaters v. City of New York, 308 N. Y. 493). That the Legislature has since failed to redefine “ net rental income ” to allow deduction of depreciation is some additional evidence of its intention.
To summarize then, the petitioner taxpayer’s calculation of her income for purposes of section 467 was, on the view taken here, correct except for her deduction of $250 depreciation from net rental income. After thus taking the full $250 depreciation deduction, petitioner computed her net income for purposes of section 467 at $3,257.85. When an appropriate adjustment is made, her “ income ” was $3,507.85, which still brought her within the city’s $3,600 limitation.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Fuld and Judges Bubke, Jasen, Jones and Wachtleb concur; Judge GIabbielli taking no part.
Order affirmed.