53 N.Y.2d 86 (1981)
James P. McGowan, Respondent,
v.
Mayor of City of New York et al., Appellants.
Court of Appeals of the State of New York.
Argued April 27, 1981.
Decided June 4, 1981.
Allen G. Schwartz, Corporation Counsel (Alfred Weinstein and Leonard Koerner of counsel), for appellants.
Murray A. Gordon, Michael J. Horowitz, Philip A. Lacovara, Gerald Goldman and William R. Stein for respondent.
Judges JASEN, WACHTLER and MEYER concur with Judge FUCHSBERG; Judge JONES dissents and votes to affirm in a separate opinion in which Chief Judge COOKE and Judge GABRIELLI concur.
*89 FUCHSBERG, J.
The substantive issue we are called upon to determine is whether, under section 434a-3.0 of the New York City Administrative Code, a New York City police lieutenant *90 whom the police commissioner assigned to act in a supervisory capacity in the detective division became entitled per se to an increase in his level of compensation. Insisting that he was, the plaintiff, James P. McGowan, whose case has been severed from consolidated actions in which a considerable number of other lieutenants and sergeants sought similar relief, sued for the statutory salary differential.
Section 434a-3.0, which outlines the methodology for structuring the detective division, authorizes the commissioner to staff it with members of the regular police force whom he "details" to such "service". In police parlance, "detailing" is accomplished by a routine personnel order by which a change of police duty is identified and effected. Of particular interest to this case is subdivision c of section 434a-3.0 which, added to this statute when it was amended in 1964, specified that, among the persons "so detailed," the commissioner is authorized to "designate lieutenants as commanders of detective squads" and sergeants as "supervisors" of such squads.
As the sole basis for his demand for a salary level beyond that which his rank as police lieutenant would have called for had he been detailed to other duty, the plaintiff relies on subdivision c's statement that lieutenants and sergeants "while performing duty in [the detective] division and while so designated as commanders * * * or supervisors * * * shall be paid such salary as may be determined by the mayor" (emphasis supplied).[1] It is undisputed that some individuals who were so assigned to these posts were also clearly, and indeed expressly, "designated" as such by the commissioner and, during the period they held these designations, were the recipients of the salary differentials fixed by the Mayor accordingly. It is also uncontested that neither the plaintiff nor, for that matter, any of the other suitors from whose cases his was severed, was ever the subject of such a designation or the beneficiary of a corresponding financial emolument.
Nevertheless, Special Term and the Appellate Division overruled the city's contention that designation by the commissioner *91 was an unfulfilled condition precedent to any possible recovery by Lieutenant McGowan. Instead, in the main because, in the view of these courts, it would have been fairer to have treated all those assigned to command or supervisory service equally, they held that de facto service in these posts sufficed to mandate the ordinance's salary benefits. In effect, at least in this context, any distinction between the terms "detail" and "designate" was rendered meaningless by these decisions. The result, after a drawn-out course of litigation at nisi prius and in the Appellate Division, was a monetary judgment for the plaintiff.[2] For the reasons which follow, we reach a contrary conclusion.
Preliminary, we note that the wisdom or fairness of the statutory scheme, on which, as already indicated, the courts below so decisively commented, and to which the parties have alluded extensively in their briefs, is besides the point. No constitutional infirmity or violation of statutory law having been raised, these essentially are considerations for the Legislature and not for the courts (Matter of Rapp v New York City Employees' Retirement System, 42 N.Y.2d 1, 6). Thus, it matters not if, in its practical application, as plaintiff hypothesizes, the ordinance may produce "organizational weaknesses", "chafed command relationships" or "chaotic" personnel practices, including the possibility that, because of the impact of seniority, the lack of an increase in the salary of a detailed but undesignated commander of a detective squad may mean that the commander will receive a lower salary than that of a detective under his command. Absent the constraint of any overriding legal or *92 constitutional principle, it was similarly a matter for legislative judgment alone as to whether, especially given the quasi-military nature of the police, it would enhance rather than handicap their performance to vest the commissioner, who, in any event, is empowered to make and terminate the assignments in question as he sees fit, with authority to selectively designate from among those whom he favors with appointment to leadership roles, the ones who, in his judgment, deserve what the city's brief calls merit increases to "sharpen motivation and reward outstanding performance".
Focusing then on the applicable Administrative Code provision, we begin with a bit of unrefuted history of the circumstances that preceded, accompanied and followed its enactment. From these we observe that, well before subdivision c was incorporated in the 1964 enactment (Local Laws, 1964, No. 17 of City of New York), it had been the practice to allocate fewer budgetary lines for supervisors and commanders of detective squads than the number of officers who would be given such assignments. In exercising discretion as to the choice of designees, each commissioner, not surprisingly, would adopt different criteria. So, according to an affidavit by former Chief of Detectives Albert Seedman, submitted on behalf of the plaintiff and his then consolidated confreres, at least since 1956 "a rough form of seniority was in effect to allocate the limited number of budgetary lines to the greater number of supervisors and commanders of detective squads". (Cf. Matter of Hagan v Murphy, 39 Misc 2d 82, 87, affd 19 AD2d 862, affd 14 N.Y.2d 701.) And, according to an affidavit of a chief personnel officer for the police department, in his time and experience the commissioner would designate individuals only after the officer's "entire performance and experience record" had been reviewed before a board composed of high ranking officers.
It was in this setting that section 434a-3.0 of the Administrative Code was introduced "by request of the Police Commissioner" (1964 Proceedings of the Council of the City of New York, p 679) and unanimously passed following a favorable committee report (id., p 981). This report stated, in pertinent part (id., p 977):

*93 "[The bill] incorporates into law positions presently authorized and provided for in the budget, namely
* * *
"(c) commanders and supervisors of detective squads who must be lieutenants and sergeants, respectively, at a salary to be determined by the Mayor.
"The positions of commander of detective squad, supervisor of detective squad, first, second and third grade detective have long been established in the Police Department's organization. However, except for the position of first grade detective, there has been no statutory authority for these designations. In order to provide a foundation for departmental organization, it is deemed necessary to include these designations within the Administrative Code."
That the proposed law was not intended to alter the practice of limiting the number of detective squad members who would be both detailed and designated appears from the bill jacket. Aside from the commissioner's request, it contains a memorandum to the Mayor's counsel from the director of the city budget in which the latter gives assurance that "the proposal, in general, would formalize what we are doing presently, and from that standpoint additional costs are not evident".
This contemporaneous comment turned out to be prophetic. Significantly, it was the nature of implementing legislative and executive action which made it so. Because there thereafter was no increase in the limited number of designees, no budget increase followed in the wake of the passage of the bill. In fact, no change in the number of supervisory positions funded adversely affected any budget until 1970-1971, and then it was to lower it.
Nor did the fact that many officers who were detailed to command or supervisory service went undesignated and unfunded go unnoticed. In 1967, the International Association of Chiefs of Police issued "An Organizational Study of the Police Department, New York City, N.Y.", in which it was publicly opined that "[a] major problem exists in the police department in regard to the present rank structure (and accompanying pay grades of detectives). The present structure has caused a morale problem within *94 the detective and supervisory ranks as well as the uniformed force because of the inequities involved * * * Members who are performing investigative tasks are paid the same salary as their supervisors in many instances" (p 404).
This history is of far more than passing interest. To paraphrase Justice HOLMES, this case is one in which a page of history may be worth even more than a volume of logic (New York Trust Co. v Eisner, 256 US 345, 349). Thus, in the absence of a manifestation of intent to change a long-established practice, ordinarily no design to do so will be attributed to legislative action (Uniformed Fire-fighters Assn. Local 94, IAFF, AFL-CIO v Beekman, 52 N.Y.2d 463, 471-472; Matter of Delmar Box Co. [Aetna Ins. Co.], 309 N.Y. 60, 66). Here there was no such manifestation. To the contrary, we have affirmative statements that the bill was to give legislative sanction to a pre-existing custom (cf. People ex rel. O'Connor v Girvin, 227 N.Y. 392, 396).
The practical construction of the code amendment, as actually perceived, need be of no less moment (see La Guardia v Cavanaugh, 53 N.Y.2d 67; Matter of Bernstein v Toia, 43 N.Y.2d 437, 448). The budgetary actions of the police commissioner, the Mayor, and the Board of Estimate in the years in question are all incompatible with a premise that the enactment mandated a change. Furthermore, repeated failure of corrective action on the part of the city council or the Mayor who, as a member of the Board of Estimate, plays a legislative as well as an executive role (New York City Charter, § 61), without more connotes acquiescence (Engle v Talarico, 33 N.Y.2d 237, 242).
But, above all, the statute stands on its own feet. Carefully examined, it confirms that service on detail to the detective division is not the same as designation. It expressly distinguishes between those whom the police commissioner has put on "detail to service in said division" (subd a), and "members of the force so detailed [whom] the commissioner may designate", including patrolmen and policewomen as detectives of the first, second and third grades (subd b) and "lieutenants as commanders of detective squads and sergeants as supervisors of detective squads" (subd c).
*95 This carefully made distinction between "detail" and "designation" was recognized in Matter of Detective Endowment Assn., Police Dept., City of N. Y. v Leary (36 AD2d 289, affd 30 N.Y.2d 577), where patrolmen assigned to work in the detective division complained that assignment to detective work without such designation and increased salary benefits amounted to performance of out-of-title work. Said the Appellate Division, in language not unsuitable to the case before us now: "Section 434a-3.0 of the Administrative Code of the City of New York gives the Police Commissioner power to detail members of the force to the Detective Bureau. Subdivision e provides that any member so detailed shall retain his or her rank in the force and shall be eligible for promotion as if continuing to serve in the uniformed force with the time served in the Detective Bureau counting as if served in his or her rank or grade for credit in the uniformed force. The designation of patrolmen as detectives is wholly within the discretion of the Police Commissioner, and may be revoked at his pleasure (Ibid., subd. f.)" (36 AD2d, p 291; emphasis supplied.)
Finally, the distinction between one detailed and one designated is reinforced by the conjunctive aspect of the critical clause "while performing duty in such division and while so designated". If performance of duty was to be sufficient warrant for higher pay, the prepositional phrase "while so designated", to say the least, would be superfluous. Such disregard of chosen language would, however, fly in the face of the fundamental statutory construction principles that an "enacting body will be presumed to have inserted every provision for some useful purpose" (Matter of Albano v Kirby, 36 N.Y.2d 526, 530; McKinney's Cons Laws of NY, Book 1, Statutes, § 98, p 223) and that the use of different terms in close proximity within the same sentence strongly supports the conclusion that different concepts were intended (Matter of Jeter v Ellenville Cent. School Dist., 41 N.Y.2d 283, 286).[3]
*96 Accordingly, the judgment for the plaintiff and the orders brought up for review should be reversed and judgment granted in favor of the defendants.
JONES, J. (dissenting).
I would affirm the order of the Appellate Division for the reasons stated in the opinion of Justice EDWARD GREENFIELD at Trial Term. It need only be added that the arguments advanced by the city in our court grounded in the particular language of the code are not persuasive. The diction of section 434a-3.0 is precise. The verb phrase "detail to service" is used in subdivision a to refer to the assignment of personnel to the detective division without reference to identification of particular duty within the division. By distinction the verb "designate" is employed in subdivision b to refer to the identification of the duties and responsibilities to be performed within the division. Nothing in the code suggests the necessity for any formalistic ritual to establish entitlement to increased salary on the part of individuals who have both been detailed to service in the division and assigned to duty in and are in fact perfoming the duties of the particular title.
Judgment appealed from and orders of the Appellate Division brought up for review reversed, with costs, and judgment granted in favor of defendants.

Appendix A
§ 434a-3.0 Detective division.  a. The commissioner shall organize and maintain a division for detective purposes to be known as the detective division and shall, from time to time, detail to service in said division as many members of the force as he may deem necessary and may at anytime revoke any such detail.
b. Of the members of the force so detailed the commissioner may designate:
1. patrolmen not exceeding two hundred seventy-five in number, and policewomen not exceeding five in number, as detectives of the first grade, who while performing duty in such division and while so designated as detectives of the first grade, shall be paid the same salary as lieutenants; and
*97 2. a certain number of patrolmen and a ceratin number of policewomen, as detectives of the second grade, who while performing duty in such division and while so designated as detectives of the second grade, shall be paid the same salary as sergeants; and a certain number of patrolmen and a certain number of policewomen as detectives of the third grade, who while performing duty in such division and while so designated as detectives of the third grade shall be paid such salary as may be determined by the mayor.
c. The commissioner may designate lieutenants as commanders of detective squads, and sergeants as supervisors of detective squads, who while performing duty in such division and while so designated as commanders of detective squads or supervisors of detective squads shall be paid such salary as may be determined by the mayor.
d. 1. The person who may be assigned by the commissioner to the command of such division while acting in such capacity shall receive the same salary as a captain detailed to act as inspector. The commanding officer of the detective division upon being retired while acting in that office and capacity, shall receive a pension of not less than one-half of the full salary or compensation received by him as such commanding officer.
2. The provisions of paragraph one of this subdivision d. shall remain in effect only so long as the person who is assigned to the command of such division on the date on which this paragraph two takes effect continues to hold such assignment. Upon the termination of the assignment of such person, including, but not limited to, termination by retiring from the police force or other removal from or vacation of his position on the police force, or by revocation of his assignment, the provisions of paragraph one of this subdivision d. shall be deemed repealed, effective upon the date of such termination, and shall become void, inoperative and without any force or effect.
e. Any member of the force detailed to such division while so detailed shall retain his or her rank in the force and shall be eligible for promotion the same as if serving in the uniformed force, and the time during which he or she serves in such division shall count for all purposes as if served in his or her rank or grade in the uniformed force.
f. The commissioner may at his pleasure revoke any designation made pursuant to the provision of this section. (Amended by L. L. 1964, No. 17, April 27.)
NOTES
[1] The full text of section 434a-3.0, including, of course, the language we have quoted, is to be found at the foot of this opinion as Appendix A.
[2] In all, two interlocutory Appellate Division orders have been brought up for review (CPLR 5501, subd [b]). The later of these, a 1979 order affirming a judgment which, among other things, directed an assessment of damages for all the plaintiffs including Lieutenant McGowan in the consolidated actions, is before us as of right because of a dissent on a question of law (CPLR 5601, subd [d]; see 7 Weinstein-Korn-Miller, NY Civ Prac, par 5601.24), our scope of review not being confined to the arguments expressed in that dissent (Matter of Duchnowski, 31 N.Y.2d 991). The earlier Appellate Division order, entered in 1975, unanimously affirmed so much of a judgment which, in essence, declared that failure to award the salary differential to all those, who, in fact, commanded or supervised detective squads offended the Administrative Code, but modified that judgment to the extent of reinstating certain defenses. The 1975 order is here for review by our permission (CPLR 5602, subd [a], par 1, cl [ii]), the application having been timely made upon the entry of final judgment.
[3] In light of our interpretation of section 434a-3.0, we have no occasion to consider or pass on the city's points regarding either the effect of the budgetary provisions contained in former sections 123 and 124 of the New York City Charter or the propriety of an award of damages for the period subsequent to the time when Lieutenant McGowan's action was commenced.