Hugh G. **MADSON**, petitioner,
**Respondent,**

v.

Robert Lee **OVERBY**, City Administrator, City of Lake Elmo, et
al., **Appellants.**

No. C2–87–2422.

Court of Appeals of Minnesota.

May 31, 1988.

Mark W. Biglow, Minneapolis, for respondent.

Frederic W. Knaak, Rauenhorst, Carlson & Knaak, Arden Hills, for appellants.

Heard, considered and decided by PARKER, P.J., and KALITOWSKI and LOMMEN,* JJ.

OPINION

A. PAUL LOMMEN, Acting Judge.

Respondent, Hugh G. Madson, served appellants, the City of Lake Elmo, with a Notice of Violation of the Metropolitan Agricultural Preserves Act, Minn.Stat. §§ 473H et seq. (the Act) on October 9, 1986. The alleged violation was commercial storage use of land in Lake Elmo owned by Thomas G. Armstrong, a district court judge in the Tenth Judicial District, and his wife, Rosemary E. Armstrong. The notice was accompanied by a demand that Lake Elmo enforce the restrictive use provisions of the Act. The City of Lake Elmo took no action in response to the notice and demand.

Respondent commenced a mandamus action on October 31, 1986, seeking an order compelling the City to take action to stop the commercial use on Armstrongs' property.

Because Thomas Armstrong is a district court judge in Washington County, a judge

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

from another judicial district was assigned to hear the case.

Cross motions for summary judgment were denied on August 12, 1987. The matter proceeded to a one day trial to the court on August 26, 1987. The trial court found that Armstrongs' commercial storage use on agricultural preserve land was a violation of the Metropolitan Agricultural Preserves Act. The court also found that a February 23, 1983 restrictive covenant signed by the Armstrongs as part of their initial application for the agricultural preserve designation was violated by this commercial use.

The trial court ordered the District Court Administrator of Washington County to issue an alternative writ of mandamus ordering appellants to terminate the unlawful commercial use. The trial court's order was amended by order dated October 2, 1987 to add taxation of costs and disbursements and amended again by order dated October 9, 1987 to reduce the allowable taxed costs.

Appellants attempted to appeal the trial court decision at that time. In an order dated November 19, 1987, the Minnesota Court of Appeals ordered clarification of the basis of the appeal then before the court. The court of appeals determined that neither the October 2nd nor the October 9th orders could serve as a basis of appeal, but that the judgment or subsequent order would be an appropriate basis for appeal.

Judgment was entered on November 2, 1987. An order filed on November 10, 1987 quashed the previously entered alternative writ and authorized issuance of a peremptory writ of mandamus. Entry of judgment of that peremptory writ has been stayed pending the City's appeal of the November 2, 1987 judgment. The City did not move the trial court for a new trial.

The basis of this appeal is the judgment entered on November 2, 1987, as modified, in which the court determined that the City could be compelled, by writ of mandamus, to enforce the covenants relating to Armstrongs' land and prevent him from using it for commercial storage purposes.

By order of March 27, 1988 the court of appeals deferred respondent's request for attorney fees under Minn.Stat. § 549.21 until consideration of the merits of this appeal. By further order of the court of appeals dated April 15, 1988, the Armstrongs were denied permission to participate as amici curiae.

## FACTS

At trial the parties entered into a stipulation outlining the history of this dispute:

### I

That the City of Lake Elmo is located in Washington County, Minnesota, and organized pursuant to the provisions of Minn. Stat. Chap. 412.

### II

That pursuant to the provisions of Minn. Stat. Chap. 462.351 et seq., the City of Lake Elmo has duly enacted a comprehensive land use plan, and that it has enacted a zoning code adopted pursuant to Minn.Stat. Sec. 462.357, in conformity with the aforesaid plan and for the purpose of implementing it.

### III

That the aforesaid comprehensive plan and zoning code ordinance were adopted in conformity with the procedures and requirements of Minnesota law except as they may be found by the Court to violate in any way the provisions of Minn.Stat. Sec. 473H.

### IV

That Petitioner, Hugh Madson, is and has been at all times material to the proceedings herein, a resident and landowner within the City of Lake Elmo.

### V

That Thomas G. Armstrong is a resident of the City of Lake Elmo and the owner of real estate located within the city limits of the City of Lake Elmo hereinafter referred to as "the Armstrong Farm."

## VI

That the Armstrong Farm has been owned in fee by Thomas G. Armstrong since 1977.

## VII

That prior to the purchase by Thomas G. Armstrong of the Armstrong Farm, it was owned and operated as a farm by Thomas G. Armstrong's aunt and two uncles.

## VIII

That since 1960, space has been used on the Armstrong Farm for rental to the public of commercial storage. Initially, said storage space was located in the 5,400 square feet then available in buildings on the farm.

## IX

That on February 23, 1983, Thomas G. Armstrong and his wife Rosemary E. Armstrong executed a restrictive covenant placing the Armstrong Farm into "agricultural preserve" as that term is defined by the Metropolitan Agricultural Preserves Act, Minn.Stat. Chap. 473H. The City of Lake Elmo is, in fact, the "responsible authority" within the meaning of Minn.Stat. Chap. 473H and the above referenced restrictive covenant.

## X

That the Armstrong Farm is, and has been at all times material to these proceedings, zoned for agricultural use under the provisions of the zoning code of the City of Lake Elmo, and is designated for agricultural use under the aforesaid comprehensive land use plan.

## XI

That in 1985, Mr. Armstrong constructed a 12,320 square foot metal Butler-type building on the Armstrong Farm. That Minn.Stat. Sec. 16b.62, Subd. 1, as well as the State Building Code as adopted in Sec. 105 of the Lake Elmo Municipal Code, does not require issuance of a building permit for agricultural type buildings located in land zoned for agricultural use. No building permit was requested or granted to Mr. Armstrong for this building.

## XII

That, in or about, the year 1985, Mr. Armstrong began to advertise the use of space on the Armstrong Farm for storage purposes under the assumed name of "Low Cost Storage."

## XIII

That "Low Cost Storage" was advertised in the 1985 St. Paul White and Yellow Pages as well as in a newsletter at the Cimarron Trailer Park located in south Lake Elmo.

## XIV

That on November 18, 1986, the City Council of the City of Lake Elmo amended Sec. 307.070D1(b)(6 of the Municipal Code of the City of Lake Elmo to allow for specified conditional uses on land zoned for agriculture to permit "nontraditional" agricultural uses and non-agricultural uses by conditional use permit.

## XV

That subsequent to enacting the aforesaid ordinance, Mr. Armstrong applied for a conditional use permit subject to its provisions. The public hearing on that request was set for and heard on December 8, 1986. The City Council granted approval for the duration of 1986 for a conditional use permit for Thomas Armstrong and enacted, on January 6, 1987, the Conditional Use Permit for the duration of 1987. * * * The above mentioned Conditional Use Permit (hereinafter "Armstrong CUP") regulated the size and number of proposed buildings as well as the nature of any exterior storage use.

## XVI

That the Conditional Use Permit also restricted the total amount of acreage on the Armstrong Farm that could be used for any alternative agricultural use purpose.

## XVII

That on May 4, 1987, Thomas G. Armstrong applied for a building permit for the purpose of constructing one of the two metal Butler-type buildings provided for and authorized in the Conditional Use Permit. Construction commenced on that building soon afterward.

## XVIII

That construction of the additional Butler-type building authorized by the Armstrong CUP had not commenced prior to August 1, 1987.

## XIX

That to the best of the knowledge and belief of the parties herein, there are presently 40 of the allowed 100 boats, trucks, autos and trailers currently being stored on the Armstrong Farm. Thomas Armstrong is currently a District Court judge in Washington County, Minnesota. Other than the above stated advertisements, neither party has actual knowledge of additional sources of income of Mr. Armstrong or, in particular, the Armstrong Farm. Both parties agree, however, that "Low Cost Storage" located on the Armstrong Farm is a commercial use of the premises.

## XX

That Thomas Armstrong has planted 23,-000 trees on the Armstrong Farm since 1982. He has represented to the City his intention to utilize those plantings and others for the purpose of establishing a tree farm on the Armstrong Farm. Those parts of the Armstrong Farm which are not used for storage or forestry, and are not otherwise left open under the requirements of the local Soil and Water Conservation District, or used for residential purposes, are rented to other farmers for the production of crops and hay.

After a hearing on August 26, 1987, on Madson's petition for a writ of mandamus, the trial court made the following findings of fact:

1. That petitioner, Hugh Madson, is, and has been at all times relevant to these proceedings, a resident and landowner in the City of Lake Elmo, and has standing to bring these proceedings.

2. That in 1980, the Minnesota Legislature enacted the Metropolitan Agricultural Preserves Act. M.S. 473H.

3. That the purpose and intent of the Act was for protecting agricultural land within the metropolitan area, as defined in M.S. 473.21, and to grant various benefits to landowners electing to place their land in the Preserve.

4. That Thomas G. Armstrong owns 254 acres of land in the City of Lake Elmo (City), County of Washington in the State of Minnesota; that said land is within the metropolitan area.

5. That in 1983, Armstrong entered into an agreement with City placing said land within the Preserves Act; that the agreement contains the following covenants:

1. The Land herein described shall be kept in agricultural use. Agricultural use as that used herein means the production for sale of livestock, dairy animals, dairy products, poultry or poultry products, fur bearing animals, horticultural or nursery stock, fruit, vegetables, forage, grains, or bees and apiary products. Wetlands, pasture and woodlands accompanying land in agricultural use shall be deemed to be an agricultural use.

2. The Land herein described shall be used in accordance with the provisions of M.S. Chapter 473H which exist on the date of this covenant.

3. This Restrictive Covenant shall be binding on the owner, or his successors and assignees, and shall be an easement running with the land.

4. Duration. This Restrictive Covenant shall be in force and effect in accordance with the aforementioned statute:

a. until expiration initiated pursuant to Minn.Stat., Section 473H.08 becomes final:

b. until the agricultural preserve is terminated by executive order of the Governor: or

c. until the Land is acquired by eminent domain:

all in accordance with Minn.Stat., Chapter 473H.

5. Enforcement: This Agreement and Restrictive Covenant may be enforced by the City of Lake Elmo, or the State of Minnesota, or by an interested person, by appropriate action in the courts of the State of Minnesota.

6. That prior to 1983, some of the farm buildings on said land had been used for storing other persons' property on a limited basis.

7. That in 1985, Armstrong constructed a 12,320 square foot storage building on said land; that in 1987 he constructed a 15,000 square foot storage building on said land.

8. That Armstrong uses said building primarily for commercial storage; that he advertises in the yellow pages under the name "Low Cost Storage," and in the white pages lists his business under the same name.

9. That, additionally, Armstrong stores property on said land outside of the buildings.

10. That the land is zoned agricultural and Armstrong's use for storage of said land does not violate any ordinances of City. That insofar as the ordinances of City allow Armstrong's use of the land, said ordinances are of no effect because the use violates the state statutes; that the portion of the statute granting authority to City to administer the act does not grant the City power to contravene the intent of the act.

11. That the use of the land and buildings by Armstrong for storage purposes constitutes a commercial business, is not a related agricultural use, and violates the Metropolitan Agricultural Preserves Act and Armstrong's own covenants.

12. That the 1987 amendment to the Metropolitan Agricultural Preserves Act is not applicable to the use of the land by Armstrong.

Based on those findings the court ordered the court administrator to issue an alternative writ of mandamus compelling appellants to enforce the Act and the restrictive covenant, and to prohibit Armstrongs from using the land for commercial storage purposes.

The court explained its decision in a memorandum accompanying the order:

The intent and purpose of the act is to protect agricultural land from high taxes, various forms of local governmental regulations, and to furnish other benefits to the landowners. In exchange for these benefits, the landowner must make certain covenants. The covenants made by Thomas G. Armstrong are unambiguous and clear. It is also clear that Thomas G. Armstrong's use of the land violates the statute and his own covenants.

The 1987 amendment was intended to allow farmers who had no further need for pre-existing farm buildings to use the same for certain purposes. It would be a strange construction of the statute to say that the amendment allows a large, commercial business in new buildings.

## ISSUES

I. Does the Metropolitan Agricultural Preserves Act permit the City of Lake Elmo to authorize the use of agricultural preserve lands governed by the Act for commercial storage purposes?

II. Is a writ of mandamus the appropriate remedy for requiring a municipality to enforce covenants affecting land entered into under the provisions of the Act?

## ANALYSIS

### *Scope of Review*

■ Where there has been no motion for a new trial the reviewing court is limited to determining whether the evidence supports the findings of fact and whether the findings support the conclusions of law. *E.g.*, *Miller v. Snedeker*, 257 Minn. 204, 101 N.W.2d 213 (1960).

### I.

■ The Metropolitan Agricultural Preserves Act limits the uses for land desig-

nated an agricultural preserve and requires the local city or township to enforce the Act:

473H.17. Land use

Subdivision 1. Land within an agricultural preserve shall be maintained for agricultural production. The average maximum density of residential structures within an agricultural preserve shall not exceed one unit per 40 acres. The location of any new structure shall conform to locally applicable zoning regulations. Commercial and industrial uses shall not be permitted except as provided in subdivision 2 after the user is issued a permit by the authority. The authority shall be responsible for enforcing this section.

Subd. 1a. Allowed commercial and industrial operations. (a) Commercial and industrial operations are not allowed on land within an agricultural preserve except:

(1) small on-farm commercial or industrial operations normally associated with and important to farming in the agricultural preserve area;

(2) storage use of existing farm buildings that does not disrupt the integrity of the agricultural preserve; and

(3) small commercial use of existing farm buildings for trades not disruptive to the integrity of the agricultural preserve such as a carpentry shop, small scale mechanics shop, and similar activities that a farm operator might conduct.

(b) "Existing" in paragraph (a), clauses (2) and (3), means existing on August 1, 1987.

\* \* \* \* \* \*

473H.02. Definitions

Subd. 3. "Agricultural use" means the production for sale of livestock, dairy animals, dairy products, poultry or poultry products, fur bearing animals, horticultural or nursery stock, fruit, vegetables, forage, grains, or bees and apiary products.

Wetlands, pasture and woodlands accompanying land in agricultural use shall be deemed to be in agricultural use.

Subd. 4. "Authority" means the unit of government exercising planning and zoning authority for the land specified \* \* \*.

Minn.Stat. §§ 473H.17, subd. 1, 1(a), 473H.02, subd. 3, 4 (1986).

Appellants argue that the Act provides for its enforcement by local ordinances and that thus the City's enforcement is discretionary. Thus, appellants conclude, the Act provides local municipalities with discretion "in the enforcement of the Act."

Appellants also argue that a 1987 amendment to the Act "clarifies" the earlier provisions and allows Armstrongs' use of the buildings for storage. The 1987 Legislature, by Minn.Laws, Ch. 396, Art. 7, § 5, amended Minn.Stat. § 473H.17, subd. 1 as follows:

Subdivision 1. Land within an agricultural preserve shall be maintained for agricultural production. The average maximum density of residential structures within an agricultural preserve shall not exceed one unit per 40 acres. The location of any new structure shall conform to locally applicable zoning regulations. Commercial and industrial uses shall not be permitted except ~~that small on-farm commercial or industrial operations normally associated with and important to farming in the area may be permitted by the~~ as provided in section 2 after the user is issued a permit by the authority. The authority shall be responsible for enforcing this section.

The amendment added subdivision 1a, quoted previously, in its entirety. *See supra.* Appellants assert that the new language suggests that if commercial or industrial uses are developed on preserve land without a permit that the property simply loses its status as agricultural preserve land under subdivision 2 of section 473H.17 which states:

Subd. 2. Density restriction after subdivision. When a separate parcel is created for a residential structure, commercial, or industrial use permitted under subdivision 1, the parcel shall cease to be an agricultural preserve unless the eligibility requirements of section 473H.03

are met. However, the separate parcel shall remain under the maximum residential density restrictions in effect for the original preserve at the time it was placed into the preserve until the agricultural preserve status for the original parcel ends.

Minn.Stat. § 473H.17, subd. 2 (1986) (emphasis added). Appellants claim that the 1986 version of section 473H.17 permits the commercial storage use because commercial storage on farmland is widespread in the metropolitan area. They claim that the amendment simply adds the requirement that the City grant permission for the commercial use.

■ We disagree with appellants' arguments. The trial court correctly ruled that the commercial storage use is not permitted under the Act. Commercial storage is allowed only where the use is a small on-farm commercial use normally associated with and important to farming in the area, or the use has been ongoing in farm buildings in existence on August 1, 1987. Minn. Stat. § 473H.17, subd. 1, 1(a). The trial testimony of long-time farmers in the area supports the conclusion that commercial storage is not related to farming. The two Butler buildings were erected primarily for commercial storage. The City cannot authorize by ordinance or permit a use which contravenes the Act.

## II.

Appellants also argue that mandamus is an inappropriate vehicle for enforcing covenants under the Act. They claim the writ forces the City to sue Armstrong to compel enforcement of the covenant corresponding to the trial court's decision; this would involve judicial discretion which cannot be controlled by a writ of mandamus.

■ It is true that mandamus cannot be used to control judicial discretion. Minn.Stat. § 586.01 (1986). Mandamus is appropriate only where the official duty is clear and present. *E.g., State v. Hodapp*, 234 Minn. 365, 370, 48 N.W.2d 519, 522 (1951). However, we agree with respondent that, contrary to appellants' assertion, the City's duty to enforce the Act is manda-

tory. It does not involve discretion. Subdivision 1 of section 473H.17 delegates enforcement authority to the local municipality, in particular, the phrases:

Commercial and industrial uses *shall not be permitted* except as provided in subdivision 2 after the user is issued a permit by the authority. The authority *shall* be responsible for enforcing this section.

Minn.Stat. § 473H.17, subd. 1 (emphasis added). The City of Lake Elmo is the "authority" in this case. *See* Minn.Stat. § 473H.02, subd. 4. The language of the Act does not grant the City discretion whether to enforce the Act. As respondent has pointed out, the City's power to enforce the Act is not equivalent to discretion to enforce it. *See generally Minneapolis–Honeywell Regulator Co. v. Nadasdy*, 247 Minn. 159, 76 N.W.2d 670 (1956) (mandamus proper remedy where city's refusal to grant building permit was based upon invalid ground, not warranted by law); *State v. Mangni*, 231 Minn. 457, 43 N.W.2d 775 (1950) (city attorney could be properly compelled by mandamus to hire veteran for assistant city attorney under veteran's preference act).

## DECISION

The trial court correctly ruled that Armstrongs' commercial use of their land violates the Metropolitan Agricultural Preserves Act.

Mandamus is an appropriate remedy to require the City of Lake Elmo to perform its clear, statutory duty to enforce the Act.

Respondent's request for attorney fees is denied.

Affirmed.